## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| DEGELMAN INDUSTRIES, LTD, | : | |
| Plaintiff, | : | Civil Action No. 06-CV-6346 |
| | : | |
| v. | : | **REPORT AND** |
| | : | **RECOMMENDATION ON** |
| | : | **DEFENDANTS' MOTION FOR** |
| PRO-TECH WELDING AND | : | **PARTIAL SUMMARY** |
| FABRICATION, INC. and | : | **JUDGMENT** |
| MICHAEL P. WEAGLEY, | : | |
| Defendants. | : | |
| | : | |

## I.    INTRODUCTION

Pursuant to the Court's Order of August 11, 2010 [Dkt. No. 118], the undersigned was appointed Special Master to, *inter alia,* issue a Report and Recommendation on the defendants' Motion for Partial Summary Judgment ("Defendants' Motion") as to issues of non-infringement and invalidity of the patents-in-suit.

Having considered the parties' respective submissions and the oral argument conducted on November 18, 2010, the following constitutes my Report and Recommendation regarding the Defendants' Motion.

## II.    BACKGROUND

The plaintiff Degelman Industries, Ltd. ("Plaintiff") brought this action accusing defendants Pro-Tech Welding & Fabrication, Inc. ("Pro-Tech") and Michael P. Weagley (collectively "Defendants") of infringing Plaintiff's utility patent U.S. Patent No. 6,845,576 entitled "Materials Moving Blade" ("the '576 Patent") and design patents U.S. Patent Nos. D478,097 ("the D'097 Patent"), D519,128 ("the D'128 Patent"), and D519,129 ("the D'129

Patent") (collectively the "Design Patents").  The Design Patents are each entitled "Snow Moving Apparatus" and each name Robert G. Vennard, Justin L. Tremblay and Miles M.E. Evans as inventors and Plaintiff as the assignee.   [O'Brien Decl. ¶ 3, October 23, 2009.] Plaintiff asserts that the claims of its '576 Patent and the Design Patents (collectively "the patents-in-suit") are infringed by snow pusher products manufactured and sold by Defendants.

Defendants' Motion seeks declaratory relief that:

1.      Defendants have not infringed the three Design Patents as a matter of law;

2.      Defendants have not infringed the '576 Patent by selling or offering to sell Angle Model snow pushers containing only one sidewall as a matter of law;

3.      claims 1, 2, 5, and 6 of the '576 Patent are invalid as being anticipated by prior art under 35 U.S.C. § 102; and

4.      the patents-in-suit are invalid as being obvious over prior art under 35 U.S.C. § 103.

Additionally, Defendants seek to exclude the reports and expert testimony of Plaintiff's experts, David J. Quesnel, Ph.D. ("Dr. Quesnel"), and Anthony F. Dannible, CPA ("Mr. Dannible") as they relate to the issue of infringement.[1]

In addition to their motion papers and moving brief, Defendants submitted an affidavit of defendant Mr. Weagley and affidavits from Defendants' proposed experts, Jerre Heyer, William Leonard, Nicholas Godici, Alan Douglas and Kathleen Kedrowski, together with all of the exhibits which accompanied their affidavits or the reports on which they are based.  Defendants' opposition is accompanied by the Declaration of Michael A. Oropallo.

---

[1]This Report and Recommendation will address the relief sought in point nos. 1-4.  A separate Report and Recommendation will be issued to address the requested exclusion of Dr. Quesnel and Mr. Dannible.

2

### III.   STATEMENT OF FACTS

At the time Defendants' Motion was submitted to the Court, it was Plaintiff's position that each and every model snow pusher (hereinafter "pusher") manufactured and sold by Defendants infringed each of the three Design Patents.  [Dkt. No. 83, O'Brien Decl. ¶ 8.]  At oral argument, counsel for Plaintiff confirmed that the allegations of infringement of the utility patent and Design Patents by the angle pusher models had been withdrawn.  [Hr'g Tr. 4:17-5:3.]

Plaintiff, in opposition to Defendants' Motion, asserts that Defendants have disregarded the Court's Markman Construction and misapplied the standards of design patent infringement. Plaintiff also asserts that the materials relied upon in Defendants' Motion do not qualify as prior art, and that Defendants' Motion fails to meet the heightened "clear and convincing" standard that is required to overcome the presumption of validity that applies to patents.[2]

For the reasons that follow, it is my recommendation that Defendants' Motion be granted in part and denied in part.

### IV.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Avia Group Int'l, Inc., v. L.A. Gear Cal. Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988); *see also Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004) ("[i]n a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact … or when the non-

---

[2]The Supreme Court is this term hearing *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568 (E.D. Tex. 2009) *aff'd as modified*, 589 F.3d 1246 (Fed. Cir. 2009), *opinion withdrawn and superseded on reh'g*, 598 F.3d 831 (Fed. Cir. 2010), *cert. granted*, 131 S.Ct. 647, 178 L.Ed. 2d 476 (U.S. 2010), which is to consider the continued viability of the clear and convincing standard where prior art not considered by the U.S. Patent & Trademark Office ("PTO") is asserted to invalidate a patent.

movant cannot prevail on the evidence submitted when viewed in a light most favorable to it"). Summary judgment may be granted on all or a portion of a claim or defense.  Fed. R. Civ. P. 56(a).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1366 (Fed. Cir. 2001).   "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrell*, 477 U.S. 317, 323 (1986) (citation omitted); *Glaverbel Societe Anonyme, Inc. v. Northlake Mktg.* & *Supply, Inc.*, 45 F.3d 1550, 1560 (Fed. Cir. 1995).

While the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, it "need not 'produce evidence showing the absence of a genuine issue of material fact; rather, the burden on the moving party may be discharged by showing … that there is an absence of evidence to support the nonmoving party's case.'"  *Avia,* 853 F.3d at 1560 (quoting *Celotex*, 477 U.S. at 325).

Bare assertions and conclusions regarding a party's understandings, beliefs, or assumptions are not sufficient to withstand a motion for summary judgment, and an opposing party may not rest upon mere allegation or denials of the pleadings.  Rather, he or she must present affirmative evidence showing that a genuine issue of material fact exists for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *see also Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

For summary judgment purposes, all evidence is to be construed in the light most favorable to the non-movant, and every justifiable inference must be drawn in that party's favor. *McClellan* v. *Smith*, 439 F.3d 137, 144 (2d Cir. 2006); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319 (Fed. Cir. 2010).

## V.      INFRINGEMENT ANALYSIS OF PLAINTIFF'S DESIGN PATENTS

Under 35 U.S.C. § 171, "[w]hoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  The statute promotes innovation in industrial design leading to the improved appearance of products, not their functional utility.  Other sections of the patent statute apply equally to design patents, including those relating to the presumption of patent validity.  35 U.S.C. § 282.  Unlike utility patents, however, design patents consist of a single claim, shown through one or more drawings that depict the ornamental aspect(s) of the design.  *See Contessa Food Prods. v. Congra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[a] patented design is defined by the drawings, not just by one feature of the claimed design").

In determining whether a patent has been infringed, the Court must conduct a two-step analysis:  "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device."  *Cybor Corp.* v. *Fas Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (citation omitted).  The comparison carried out in the second step involves a determination as to whether the construed claim and the accused product are "substantially the same."  *Elmer* v. *ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).  The court should consider "whether an ordinary observer,

familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc.* v. *Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (*en banc*).

In general, infringement in a design patent case is a question of fact that the patentee must prove by a preponderance of the evidence. *L.A. Gear v. Thom McAn Show Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) (citation omitted); *Egyptian Goddess*, 543 F.3d at 679.  However, where no reasonable trier of fact could conclude that the patentee has met his burden, summary judgment is appropriate.  *Egyptian Goddess*, 543 F.3d at 683.

The Federal Circuit recently significantly clarified both steps of the design patent infringement analysis in its *en banc* decision in *Egyptian Goddess*.  First, the Federal Circuit discouraged the construction of a design patent claim through a detailed verbal description of the claimed design.  *Egyptian Goddess*, 543 F.3d at 679.  Second, the Federal Circuit rejected the so-called "points of novelty" analysis.  *Id.* at 678.  After *Egyptian Goddess*, the comparison step of the design patent infringement test is determined from the view point of the "ordinary observer." The ordinary observer test was established by the Supreme Court in *Gorham Co. v. White*, 81 U.S. 511 (1871), which provides:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham*, 81 U.S. at 528.

In *Egyptian Goddess*, the Federal Circuit divided cases of design patent infringement into two categories:  those where the claimed and accused designs are "sufficiently distinct" and those where they are not "plainly dissimilar."  *Egyptian Goddess*, 543 F.3d at 678.  In instances in which the claimed design and the accused design are "sufficiently distinct," it is clear without

more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer. *Id.* In this situation, consideration of the prior art is not required. *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 362 (S.D.N.Y. 2009), *aff'd*, 374 F.App'x. 956 (Fed. Cir. 2010).

The second category is described in *Egyptian Goddess* as follows: "In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art…. Where there are many examples of similar prior art designs …, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678.

The Federal Circuit also emphasized that although "the burden of proof as to infringement remains on the patentee," the burden of production of comparison to the prior art is on the accused infringer "if the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement." *Id.*

A.     **Step 1:  Claim Construction**

As a general matter, courts should not treat the process of design patent claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents. *Egyptian Goddess*, 543 F.3d at 679-80; *Degelman Indus., Ltd. v. Pro-Tech Welding, Inc.*, 630 F. Supp. 2d 273, 282 (W.D.N.Y. 2008).

The Court has already construed the Design Patents as follows:

| Design Patent | Court's Claim Construction |
| --- | --- |
| D'097 | "the overall visual impression of the ornamental design of a snow moving apparatus with gusset as set forth in the |

7

|  | drawings of the patent" |
| D'128 | "the overall visual impression of the ornamental design of a gusset used in a snow moving apparatus as set forth in the drawings of the patent" |
| D'129 | "the overall visual impression of the ornamental design of a snow moving apparatus with gusset as set forth in the drawings of the patent" |

[Dkt. No. 66, Claim Construction Decision.][3]

The parties do not contest the Court's claim constructions.

### 1.   <u>The D'097 Patent</u>

The D'097 Patent includes eight (8) drawings, Figures 1-8, respectively illustrating front perspective, rear perspective, front elevation, rear elevation, bottom plan, top plan, left side, and right side views.  In the interest of brevity, only Figures 1 and 7 of the D'097 Patent showing the patented design in its front perspective view and left side view, respectively, are reproduced below for explanatory purposes.





Figure 1                                        Figure 7

---

[3]In Defendants' Motion at page 5, Defendants did not address how the Court's Markman Construction for the D'128 Patent differed from the construction of the D'097 and D'129 Patents.

All features of the snow moving apparatus, *e.g.*, the two gussets, the wear shoes, the moldboard, and side plates, are illustrated in solid lines in the D'097 Patent.  No feature of the D'097 Patent is shown in broken lines.

A design patent is limited to what is illustrated in the drawings.  *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); *Rockport Co. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 192 (S.D.N.Y. 1999).  Structure that is not part of the claimed design, but shows the environment in which the design is associated, may be represented in the drawings by broken lines.  *In re Zahn*, 617 F.2d 261 (CCPA 1980); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001).  Because no lines in the drawings of the D'097 Patent are broken, all of the lines from all eight (8) figures form part of the claimed design and constitute part of "the overall visual impression of the ornamental design of a snow moving apparatus" referred to in the Court's claim construction.

### 2.    The D'129 Patent

The D'129 Patent includes eight (8) drawings, Figures 1-8, respectively illustrating the front perspective, rear perspective, front elevation, rear elevation, bottom plan, top plan, left side, and right side views.  In the interest of brevity and for the purpose of comparing the D'129 Patent claim to the D'097 Patent claim, only Figures 1 and 7 of the D'129 Patent are reproduced below showing the patented design in the front perspective view and the left side view, respectively.



Figure 1                          Figure 7

The views of Figures 1-8 of the D'129 Patent correspond to those of the D'097 Patent. There are, however, differences, including the use of broken lines to illustrate the wear shoes in the figures of the D'129 Patent.[4]  As noted above, broken lines mean that the features are shown for environmental effect only, and do not constitute part of the claimed design or "overall visual impression" as construed by the Court.

### 3.      The D'128 Patent

The D'128 Patent includes four (4) drawings, Figures 1-4, respectively illustrating front perspective, front elevation, bottom plan, and top plan views of the snow moving apparatus. Figures 1 and 2 of the D'128 Patent illustrating the front perspective view and the front elevation view, respectively, are reproduced below.

---

[4]This is not to say there are not more subtle differences, other than the use of broken lines, between the drawings of the D'097 Patent and the D'129 Patent.  All differences have been considered in the preparation of this Report and Recommendation.



Fig. 1

Fig. 2

Plaintiff argues that the D'128 Patent claims the overall visual appearance of a snow moving apparatus and "directs the observer's attention to the wedge-shaped gusset." [O'Brien Decl., Ex. 3.] Additional structural features shown in solid lines in the D'097 and D'129 Patents are shown in the D'128 Patent in broken lines. Structure that is not part of the claimed design, but shows the environment with which the design is associated, may be represented in the drawings by broken lines. *In re Zahn*, 617 F.2d at 261; *Door-Master*, 256 F.3d at 1313. The D'128 Patent illustrates and thus claims the overall visual and ornamental appearance of the gussets in the environment of a snow moving apparatus, with the gussets being disposed on opposite sides of the apparatus. Except for the two gussets, all other structures, *e.g.*, the wear shoes, the moldboard, and side plates, are shown in broken lines and for environmental effect.

Plaintiff asserted at oral argument that the D'128 Patent requires only a single gusset. [Hr'g Tr. 19:6-16.] While the Court's claim construction referred to a "gusset" in the singular, it does so in the context of "a snow moving apparatus as set forth in the drawings of the patent." Figures 2-4 of the D'128 Patent illustrate two gussets respectively arranged at opposite ends of a snow moving apparatus. Figures 2-4 are part and parcel of the claim and the presence of two gussets in the drawings cannot be ignored. It is readily apparent from an inspection of Fig. 1 and a comparison of Fig. 1 to Figs. 2-4 that Fig. 1 of the D'128 Patent illustrates only a single gusset because the angle of the perspective view in which the snow moving apparatus is observed in

11

Fig. 1 leaves the other gusset hidden from view by the side wall.  This conclusion is the only one that is consistent with other drawings (Figs. 2-4), which each illustrate two oppositely disposed gussets.  Thus, for purposes of the infringement analysis, the patented design has been construed as requiring a gusset at each of the opposite ends of the snow moving apparatus, as illustrated in Figs. 2-4 of the D'128 Patent.

**B.        Step 2:  <u>Comparison of Accused Products to the Design Patents</u>**

In carrying out my analysis of each accused device with respect to each of the Design Patents, I have reviewed the parties' respective briefing papers, the testimony of Mr. Jerre Heyer and the exhibits attached to his Report, the Design Patent drawings and specification, and the Court's claim construction.  I have also reviewed the arguments and evidence presented by Plaintiff regarding the issue of design patent infringement, including the photographs in the Oropallo Declaration.

The admissibility of Mr. Heyer's testimony and Report is subject to conditions set forth in my separate Report and Recommendation on Expert Opinions and Reports, which is incorporated by reference herein.  By summary, I recommend that Mr. Heyer be allowed to testify as to the experience of an ordinary observer, the appearance of the accused products, the appearance of the patented designs, and similarities and differences between them.  My Report and Recommendation is based on Mr. Heyer's considerable experience and expertise in the field, the thoroughness of his review, and evidence demonstrating that containment plows are not typical "consumer goods."  However, I also recommend that Mr. Heyer be precluded from testifying on the ultimate issue of infringement because Mr. Heyer lacks expertise in patent law and applied an incorrect standard in reaching his ultimate conclusions as to non-infringement.

### 1.     The D'097 Patent

In paragraphs 18a-18d of his Report, Mr. Heyer points to differences that each of the accused Pro-Tech models share in common with respect to the D'097 Patent drawings.  Several of these differences are further explored below in the discussion of specific models.  However, Mr. Heyer does not explain how certain of these differences, such as the edge and corner configuration of the side plates and the weld areas, would impact the overall *ornamental* appearance to the ordinary observer.  Mr. Heyer attributes other differences, such as certain characteristics of the wear shoes and weld seam, as having more of a functional effect than ornamental.[5]  In my opinion, these differences, alone or in combination with one another, are insufficient on their own to warrant a finding that the designs of the Pro-Tech snow moving apparatus are as a matter of law "sufficiently distinct" from the claimed design of the D'097 Patent as to make it "clear without more that [Plaintiff] has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678.

---

[5]Regarding the wear shoes, Mr. Heyer testified that the patented design shows "light duty" wear shoes as opposed to the heavier duty wear shoes on the Pro-Tech models.  As such, the accused products include wear shoes that "appear wider, thicker and continuous extending on the outside of the side plate …."  [Heyer Rep. ¶ 18a.]  According to Mr. Heyer, the structural differences in the wear shoes "would be better able to handle uneven surfaces and obstructions as compared to the blunt face on the wear shoes depicted in the [patented] design."  [*Id.*]  These distinctions seem to be functional and not aesthetic, and thus are not particularly relevant to the overall appearance of these product designs.  Further, Mr. Heyer states that the "ability to buy and replace wear shoes may be an important consideration for a purchaser."  [*Id.*]  While this statement may be true, it does not instruct the Court regarding the similarity between the designs as viewed by an ordinary observer.  If anything, this statement reinforces the conclusion that these differences are functional.

Generally speaking, the accused and patented designs all have extensive moldboards of the same general shape (with the exception of the FPL Fold Out Model), two side plates (with the exception of ALB Angle Model), wear shoes, and two gussets (with the exception of the SBL Switchblade Loader Model, Super Duty Loader Model, SBB Switchblade Backhoe Model, and SBS Switchblade Skid Steer Model).   Based on these similarities, I cannot say that the differences identified in paragraphs 18a-18d of Mr. Heyer's Report override similarities between the accused designs and the claimed design as to cause the infringement analysis to fall within the first category of the ordinary observer test.

While resolution of the infringement question might benefit from a comparison of the claimed and accused designs with the prior art under the *Egyptian Goddess* test, Defendants have failed to adequately carry out such a comparison.  In his Report, Mr. Heyer states that based on his "evaluation of the pertinent prior art, [he does] not believe that any infringement has occurred."  [Heyer Rep. ¶ 21.]  This statement lacks sufficient explanation and specificity as to the nature of Mr. Heyer's evaluation and which "pertinent" prior art he considered in reaching this conclusion.  The burden of production of comparison prior art is on the accused infringer. *Egyptian Goddess*, 543 F.3d at 678.  Defendants have not met this burden, and consequently I cannot conclude as a matter of law whether the differences identified in paragraphs 18a-18d of Mr. Heyer's Report would, based on similar prior art designs, "become significant to the hypothetical ordinary observer who is conversant with the prior art."  *See Id.*

Below, I will address each of the accused models individually, including the "specific model differences" specified in paragraph 18e of Mr. Heyer's Report, and will consider these additional differences in conjunction with those identified in paragraphs 18a-18d.

a.   **SPL Loader Model; SPS Skid Steer Model; and SPB Backhoe Model**

Photographs of the front prospective, front elevation, top plan, and left side views of the SPL Loader Model, SPS Skid Steer Model, and SPB Backhoe Model are reproduced below from the Heyer Report.  [Heyer Rep., Ex. A.]  For comparative purposes, Figures 1, 3, 6, and 7 of the D'097 Patent are also reproduced below.  These views are representative.  My consideration of Defendants' Motion for these and all other models involved a comparison of all views claimed in the D'097 Patent, even though all of the views are not reproduced in this Report.



| SPL Loader Model | SPS Skid Steer Model | SPB Backhoe Model |



Figure 1 of the D'097 Patent

As discussed above, Mr. Heyer testified that there are differences between all of the accused devices and the D'097 Patent figures with respect to the wear shoes, the seams and general shape of the moldboard, and the exact shape of the side walls.  [Heyer Rep. ¶¶ 18a-18d.]  Some of these differences are more discernible than others from a visual inspection of the

15

photographs of the front perspective, front elevation, top plan, and left side views of the SPL Loader Model, SPS Skid Steer Model, and SPB Backhoe Model reproduced herein.



SPL Loader Model

SPS Skid Steer Model

SPB Backhoe Model

Figure 3 of the D'097 Patent

One of these differences, specifically the vertical joint or seam, is best illustrated in Figure 3 of the D'097 Patent and appears to be absent from each of the SPL Loader Model, SPS Skid Steer Model, and the SPB Backhoe Model, as seen above.



SPL Loader Model

SPS Skid Steer Model



Figure 6 of the D'097 Patent

Differences between the designs of the attachment mechanisms and bars welded to the rear of each moldboard (see, for example, the SPL Loader Model illustrated above) would seem to be functional. In any event, to the extent that these differences affect ornamental appearance, they alone do not impact the overall visual appearance of the snow pusher to such a degree as to support a conclusion that no reasonable juror could find that the accused and patented designs are not substantially the same.[6]



SPL Loader Model          SPS Skid Steer Model          SPB Backhoe Model

Figure 7 of the D'097 Patent

---

[6]Mr. Heyer mentions the "reinforcing channels exposed and extending across the back" of the moldboard, but Mr. Heyer does not differentiate between the different models in this regard. [Heyer Rep. ¶¶ 18b, 18e.] It does not appear that all of the accused devices share the same reinforcing channel design with one another. [*Id.* at 35-36.]

The side views of these three accused products do not reveal any differences that are so significant as to alter the conclusion that there is a genuine dispute of material fact as to whether the models have substantially the same appearance to the drawings of the D'097 Patent.

The above-discussed differences identified in paragraphs 18a-18d of Mr. Heyer's Report are, according to Mr. Heyer, shared by the other accused devices.   When discussing specific model differences related to the D'097 Patent in paragraph 18e of his Report, Mr. Heyer does not specifically address any additional differences attributable to the SPL Loader Model, SPS Skid Steer Model, or SPB Backhoe Model.

Based on the evidence of record, I conclude that a reasonable fact finder could find by a preponderance of the evidence that an ordinary observer would be deceived into confusing the design of Defendants' accused SPL Loader Model, SPS Skid Steer Model, and the SPB Backhoe Model with the patented design of the D'097 Patent.   Thus, it is recommended that the Court find Defendants have not sustained their burden on summary judgment with respect to non-infringement of the D'097 Design Patent as it pertains to the SPL Loader, SPS Skid Steer, and SPB Backhoe Models.   As such, it is recommended that Defendants' motion for partial summary judgment of non-infringement of the D'097 Patent with respect to these three models be denied.

### b.      ALB Angle Model

During the oral argument, Plaintiff withdrew its infringement claim as to the ALB Angle Model.  [Hr'g Tr. 4:17-5:5.]  Accordingly, Defendants' Motion as to this product is moot and no longer needs to be addressed.

c.      **FPL Fold-Out Model**

Photographs from the Heyer Report showing a perspective view and a front view of the FPL Fold-Out Model are reprinted below with corresponding Figures 1 and 3 of the D'097 Patent.  [Heyer Rep., Ex. A.]



FPL Fold-Out Model

FPL Fold-Out Model

Figure 1 of the D'097 Patent

Figure 3 of the D'097 Patent

As shown above, the FPL Fold-Out Model has two vertically extending joints that allow the ends or side plates of the apparatus to pivot relative to the middle of the moldboard, so the unit can be collapsed for transport.  [*See also* Heyer Rep., ¶ 18.e.vi.]  These hinges, based on their size, shape, location, and overall prevalence, present a dramatic visual distinction when compared to the corresponding drawings of the D'097 Patent.  *See Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1051 (W.D. Wa. 2010).

Based on the evidence of record, I find that the overall visual impression engendered by the two spaced hinges "sharply distinguish" the accused FPL Fold-Out Model from the claimed design. *See Wing Shing,* 665 F. Supp. 2d at 367. These differences, alone or together with the differences noted in paragraphs 18a-18d of Mr. Heyer's Report, render the accused design sufficiently distinct from the claimed design as to lead me to conclude that no reasonable trier of fact could find by a preponderance of the evidence that an ordinary observer would believe the FPL Fold-Out Model design to be substantially the same as the claimed design of the D'097 Patent. For this reason, it is recommended that the FPL Fold-Out Model be found not to infringe the D'097 Patent as a matter of law. Thus, it is recommended that the Defendants' motion for partial summary judgment of non-infringement of the FPL Fold-Out Model be granted with respect to the D'097 Patent.

> d. **SBL Switchblade Loader Model; Super Duty Loader Model; SBB Switchblade Backhoe Model; and SBS Switchblade Skid Steer Model**

Each of the SBL Switchblade Loader Model, the Super Duty Loader Model SBB, the Switchblade Backhoe Model, and the SBS Switchblade Skid Steer Model includes pairs of wedge-shaped gussets that intersect one another at respective opposite side plates of the snow pushers. Exemplary photographs of the Super Duty Loader Model and the SBB Switchblade Backhoe Model contained in the Heyer Report are reproduced below together with the corresponding front perspective view of Fig. 1 of the D'097 Patent.



Super Duty Loader Model      SBB Switchblade Backhoe Model

Figure 1 of the D'097 Patent

Fig. 1

According to Mr. Heyer, "each side plate on [these] models is reinforced by a pair of wedge-shaped gussets that intersect one another – thereby increasing the contact area with the moldboard.…  [T[his is wholly distinct from the single flat triangular gusset shown in Figs. 1, 3, 5 and 6 of the [D'097] design patent."  [Heyer Rep. ¶ 18.e.ii.]  A photograph of a pair of gussets of one "switchblade" model is shown below in relation to the corresponding fragmented front perspective view (Fig. 1) of the D'097 Patent.



I also find that similar distinctions exist when viewing the front view for these four (4) accused products.  [*See* Heyer Rep.]  The pairs of gussets intersect (or at least are closely adjacent to) one another to provide an overall impression of a compilation structure that is

distinct from the single-gusset structure claimed in the D'097 Patent.  Based on these differences and other evidence of record, I find that the overall visual impression of the dual gusset, alone or in combination with other differences identified in paragraphs 18a-18d of the Heyer Report, "sharply distinguishes" the accused products from the claimed design.  *See Wing Shing,* 665 F. Supp. 2d at 367.  The differences render the accused designs sufficiently distinct from the claimed design as to lead me to conclude that no reasonable trier of fact could find by a preponderance of the evidence that an ordinary observer would be deceived into confusing the designs of Defendants' SBL Switchblade Loader Model, Super Duty Loader Model, SBS Switchblade Backhoe Model, and SBS Switchblade Skid Steer Model with the claimed design of the D'097 Patent.

For these reasons, it is recommended that these four (4) accused products be found not to infringe the D'097 Patent as a matter of law.  I am aware that the scope of D'097 Patent differs from the D'129 Patent and from the scope of the D'128 Patent.  Regardless, the evidence establishes that the overall appearance of these four (4) products, namely, the SBL Switchblade Loader Model, Super Duty Loader Model, SBB Switchblade Backhoe Model and SBS Switchblade Skid Steer Model, differs significantly from the D'097 Patent because of the shape and appearance of the dual-gusset configuration, together with additional differences pointed out in paragraphs 18a-d of the Heyer Report.  It is therefore recommended that the Defendants' motion for partial summary judgment of non-infringement of the D'097 Patent be granted as to these four products.

The D'129 Patent and the D'128 Patent will be addressed separately below.

e.   **IST Loader Model; IST Backhoe Model; and IST Skid Steer Model**

Photographs contained in the Heyer Report of a front perspective view of Defendants' accused IST Loader Model, IST Backhoe Model, and IST Skid Steer Model are reprinted below. Also reproduced below is Fig. 1 of the D'097 Patent.



IST Loader Model

IST Backhoe Model

IST Skid Steer Model

Figure 1 of the D'097 Patent

I am not persuaded that the differences pointed out in Mr. Heyer's Report render the accused designs of the IST Loader Model, IST Backhoe Model, and IST Skid Steer Model sufficiently distinct from the D'097 Patent design as to find the patentee could not meet its burden as a matter of law. Mr. Heyer points out, for example, that the IST accused devices have side walls with 3 edges above the wear shoes. [Heyer Rep. ¶ 18.e.v.] Mr. Heyer also notes the

specific shape of the gussets seems slightly different than what is illustrated in the D'097 Patent. While these are differences, there is a genuine dispute of material fact as to whether these differences would render the products not substantially the same to the claimed design of the D'097 Patent.

An examination of the front views (shown below) only further serves to strengthen my opinion regarding the issues of fact as to substantial similarity.



IST Loader Model

IST Backhoe Model

IST Skid Steer Model

Figure 3 of the D'097 Patent

While an examination of the rear views (shown below) of these three products reveals additional differences, Defendants have not established that the differences are sufficient as a matter of law to preclude a reasonable fact finder from concluding the patent is infringed.



IST Loader Model

IST Backhoe Model

24



IST Skid Steer Model

Figure 4 of the D'097 Patent

The ordinary observer test applies to the patented design in its entirety, as it is claimed. *See Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed.Cir.1992).   "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."   *Litton Sys., Inc. v. Whirlpool*, 728 F.2d 1423, 1444 (Fed.Cir.1984); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993); *see also Crocs, Inc. v. International Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010).

It is thus recommended that the Court find that Defendants have not sustained their burden on summary judgment with respect to the issue of non-infringement of the D'097 Design Patent as it relates to the IST Loader Model, the IST Backhoe Model, and the IST Skid Steer Model.  I conclude that a reasonable fact finder could find by a preponderance of the evidence that an ordinary observer would be deceived into confusing the accused IST products with the claimed design.  As such, it is recommended that the Defendants' Motion be denied with respect to partial summary judgment of non-infringement of the D'097 Patent by these three models.

### f.  **PBS Pull Back Model**

Photographs from the Heyer Report showing the PBS Pull Back Model in a perspective view and a top view are reproduced below together with the corresponding views of Figures 1 and 6 of the D'097 Patent.



PBS Pull Back Model

PBS Pull Back Model

Figure 1 of the D'097 Patent

Figure 6 of the D'097 Patent

    As previously noted, the overall design as shown in the drawings must be considered for

design patent infringement.  Minor differences will not prevent a finding of infringement.  *Crocs*,

598 F.3d at 1303.  According to Mr. Heyer, the "[p]ullback models such as the PBS/PBB

model each have side plates that support a pair of wear shoes, where the shoes are oriented

relative to one another in a L-shape.  Thus, unlike the apparatus depicted in the design drawings,

the Pro-Tech Pullback models also have four wear shoes — one on the front and one on the

bottom of each side plate.  Again, this is wholly distinct from the side plates and wear shoes

depicted in the design drawings."  [Heyer Rep. ¶ 18.e.iii.]  Thus, Mr. Heyer only identifies the

shape and disposition of the wear shoes as the additional "specific model differences" relative to

the Pull Back Models.  [*Id.*]  The wear shoes constitute a relatively small portion of the overall

design of the claimed snow moving apparatus.  A reasonable trier of fact could find the accused

26

PBS Pull Back Model is substantially the same to the claim design despite this difference. While there appears to be a more substantial difference between the respective designs, in particular with respect to the bar extending between the side plates and in front of the moldboard, the Heyer Report fails to mention this difference or consider how it affects the application of the ordinary observer test.

From the foregoing comparison of the accused PBS Pull Back Model with respect to the drawings of the D'097 Patent, I find that there is a genuine dispute of material fact as to whether the accused design meets the "substantially similar" test for infringement of the D'097 Patent. Thus, it is recommended that the Defendants' motion for partial summary judgment of non-infringement of the D'097 Patent with respect to the PBS Pull Back Model be denied.

g.      **SPC Compact Model**

Photographs of the front perspective and front elevation view of the SPC Compact Model contained in the Heyer Report are reproduced below with corresponding Figs. 1 and 3 of the D'097 Patent.





| SPC Compact Model | Figure 1 of the D'097 Patent |



SPC Compact Model

Figure 3 of the D'097 Patent

Based on the evidence of record, there is a genuine dispute as to whether this product would be deemed substantially similar when the ordinary observer test is applied.  Mr. Heyer testified that there are differences regarding the wear shoes, the seams and general shape of the moldboard, and the exact shape of the side walls common to each model.[7]  [Heyer Rep. ¶¶ 18a-d.]  While there may be differences between the patent figures and what is shown in the photographs, there are also strong overall similarities, for example, as seen by a comparison of the front view (above) of the accused product and claimed design.  As explained above, I have not limited my consideration to only those views reproduced in this Report.

The record reflects a genuine dispute regarding the similarities between this product and the D'097 Patent.  It cannot be said on this record whether the differences render the respective designs "sufficiently distinct" as to make it clear, without more, that Plaintiff cannot meet its burden of proving infringement.  As noted above, Defendants have not met their burden of production with respect to the prior art to justify a finding that "an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design."  *See Egyptian Goddess*, 543 F.3d at 682.  Therefore it is recommended that partial summary judgment be denied with respect to the alleged non-infringement of the D'097 Patent by the SPC Compact Model.

---

[7]Mr. Heyer does not specifically address any additional "specific model differences" between the SPC Compact Model and the design of the D'097 Patent.

h.      **FTF Forklift Model**

Photographs contained in the Heyer Report of front perspective and front elevation views of the FTF Forklift Model are reprinted below together with Figs. 1 and 3 of the D'097 Patent. As in the case of each accused device, I have also considered the other views shown in and accompanying testimony contained in the Heyer Report, even though these additional views are not reproduced herein.



FTF Forklift Model



Figure 1 of the D'097 Patent

According to Mr. Heyer, specific model differences unique to the FTF Forklift Model are as follows:  the "[f]orklift models each include apertures in the moldboard, and associated tubing and reinforcement, that permit the forks of the forklift vehicle to be inserted through the moldboard …."  [Heyer Rep. ¶ 18.e.vii.]   The view above shows the associated tubing and reinforcement.   The following photograph of the front view of the Forklift Model further emphasizes distinctions between the Forklift Model and the D'097 Patent design.



FTF Forklift Model

Figure 3 of the D'097 Patent

The appreciable size, prevalent location, etc. of the tubing all contribute to the overall ornamental appearance of the accused product.  Based on the evidence of record, I find that the overall visual impression of the moldboard alone "sharply distinguishes" the accused product from the claimed design.  *See Wing Shing,* 665 F. Supp. 2d at 367.  Based on these differences, alone or in combination with the differences discussed in paragraphs 18a-18d of the Heyer Report I find that the FTF Forklift Model is "sufficiently distinct" from the claimed design.  It is clear without more that Plaintiff has not met its burden of proving the two designs would appear substantially the same to the ordinary observer.

For these reasons, it is recommended that the Defendants' motion for partial summary judgment of non-infringement of the D'097 Patent with respect to the FTF Forklift Model be granted.

## 2.	The D'129 Patent

As discussed above in the claim construction section of this Report and Recommendation, Figures 1-8 of the D'097 Patent general correspond to Figures 1-8 of the D'129 Patent.  The main difference between the respective claims of the patents is that the D'097 Patent claims the wear shoes by representing them in solid lines, whereas the wear shoes are shown in broken lines in the D'129 Patent and therefore do not constitute part of the claimed subject matter.  *See In re Zahn*, 617 F.2d at 261; *Door-Master*, 256 F.3d at 1313 (stating that elements shown in dotted or broken lines do not form part of the claimed invention).  As discussed above, differences relating to the wear shoes were not given much weight in the non-infringement analysis of the D'097 Patent for the purposes of partial summary judgment.

With these differences between the D'097 and D'129 Patent in mind, I find that the determinations set forth above with respect to the D'097 Patent apply equal as well to the D'129

Patent.   To summarize, it is recommended that Defendants' motion for partial summary judgment of non-infringement of the D'129 Patent be granted with respect to the FPL Fold Out Model, the SBL Switchblade Model, the Super Duty Loader Model, the SBB Switchblade Backhoe Model, the SBS Switchblade Skid Steer Model, and FTF Forklift Model.   It is recommended that the Defendants' Motion for non-infringement of the D'129 Patent be denied with respect to all other models.

### 3.   The D'128 Patent

In paragraphs 23-27 of Mr. Heyer's Report, Mr. Heyer identifies differences between the general design of all of the accused Pro-Tech models and the claimed design of the D'128 Patent. Mr. Heyer concludes that (1) Figures 1-4 of the D'128 Patent illustrate only a single flat plate gusset depicted as triangular or "pie-shaped" that contacts the face of the moldboard and the end plate and (2) each of the Pro-Tech models include a "wedge-shaped" or "two-faceted" gusset or gussets that reinforce the opposite end plates.   Mr. Heyer concludes that the shapes and relative sizes of the "triangular" gusset of the D'128 Patent are different than the "wedge-shaped" or "two-faceted" gussets of the Pro-Tech models.

My review of the D'128 Patent leads me to conclude that a reasonable trier of fact could find by a preponderance of the evidence that an ordinary observer would believe that a triangle or "pie" piece is substantially similar in shape to a wedge shape, at least from the perspectives of the views claimed in the D'128 Patent.   The differences identified in paragraphs 23-27 of Mr. Heyer's Report do not render the accused designs sufficiently distinct from the D'128 Patent design as to make clear that Plaintiff cannot meet its burden of proving the accused designs and claimed design would appear "substantially the same" to an ordinary observer.

31

While resolution of the infringement issue might benefit from a comparison of the accused designs and the D'128 Patent design with the prior art under the *Egyptian Goddess* test, Defendants have failed to adequately carry out such a comparison in their Motion.  In his Report, Mr. Heyer states that based on his "evaluation of the pertinent prior art, [he does] not believe that any infringement has occurred."  [Heyer Rep. ¶ 30.]  This statement lacks sufficient explanation and specificity as to the nature of Mr. Heyer's evaluation and which "pertinent" prior art he considered in reaching this conclusion.  Accordingly, I cannot conclude as a matter of law whether the differences identified in paragraphs 23-27 of Mr. Heyer's Report would, based on similar prior art designs, "become significant to the hypothetical ordinary observer who is conversant with the prior art."  *Egyptian Goddess*, 543 F.3d at 678.

Below I will address the additional specific model differences for the ALB Angle Model, the SBB Switchblade Backhoe Model, the SBS Switchblade Skid Steer Model, and the Super Duty Loader Model separately discussed in paragraph 28 of Mr. Heyer's Report, and will consider the differences in conjunction with those differences identified in paragraphs 23-27 of the Heyer Report.  As discussed above, only representative photographs have been reproduced.

### a.    <u>ALB Angle Model</u>

As noted above, during the oral argument, Plaintiff withdrew its infringement claim as to the ALB Angle Model.  [Hr'g Tr. 4:17-5:5.]  Accordingly, Defendants' Motion as to this product no longer needs to be addressed.

**b.** **SPL Switchblade Loader Model, SSB Switchblade Backhoe Model, SBS Switchblade Skid Steer Model, and Super Duty Loader Model**

I recommend that partial summary judgment of non-infringement of the D'128 Patent be granted with respect to the SPL Switchblade Loader Model, the SSB Switchblade Backhoe Model, the SBS Switchblade Skid Steer Model, and the Super Duty Loader Model. Not only do these devices contain twice the number of gussets of the claimed design, but the gussets of each pair intersect (or at least are closely adjacent to) one another to provide an overall impression of a compilation structure that "sharply distinguishes" the accused products from the claimed design. *See Wing Shing,* 665 F. Supp. 2d at 367. It is my recommendation that the Court conclude that no reasonable trier of fact could find, by a preponderance of the evidence, that an ordinary observer would be deceived into confusing the single-gusset design of the D'128 Patent with the visually distinct dual-gusset designs of Defendants' SBL Switchblade Loader Model, Super Duty Loader Model, SBS Switchblade Backhoe Model, and SBS Switchblade Skid Steer Model.

**C.** **Doctrine of Equivalents**

From paragraph A of Defendants' Motion [Dkt. No. 80] requesting that Plaintiff's complaint be dismissed as to infringement of the Design Patents, I conclude that the Motion implicitly covers both literal infringement and infringement under the doctrine of equivalents. Had Defendants intended that their Motion only encompass literal infringement, dismissal of the complaint would not be appropriate. If Defendants' Motion were construed to cover only literal non-infringement, then even if the Court were to grant summary judgment in favor of Defendants, the issue of infringement under the doctrine of equivalents would still remain and

would preclude Defendants' requested relief of dismissal of the design patent infringement claims.

Given the nature of relief, *i.e.*, dismissal, requested by Defendants in the Motion, Plaintiff presumably presented its full arsenal of arguments, including infringement under the doctrine of equivalents, to avoid possible dismissal of their design patent infringement claims. Yet faced with possible dismissal of its design patent infringement claims, Plaintiff did not present any separate arguments as to why infringement under the doctrine of equivalents would be appropriate should the Court find literal infringement lacking. Accordingly, I find it appropriate to consider the issue of non-infringement under the doctrine of equivalents as to those accused products that I have identified above as not infringing one or more of the Design Patents.

Although the applicability of the doctrine of equivalents to design patent infringement has been questioned,[8] the Federal Circuit has acknowledged that the doctrine of equivalents applies to design patents. *See Sun Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) (abrogated on other grounds) ("While the doctrine of equivalents applies to design patent cases, … it applies only when the accused product includes features equivalent to the novel claimed design features"). The *Egyptian Goddess* court clarified the test for design patent infringement without articulating a separate test for infringement under the doctrine of equivalents. 543 F.3d at 670, 676.

My findings of non-infringement above are based on determinations that the accused marks are plainly dissimilar from the Design Patents and/or "sharply distinguish" from the Design Patents. For these reasons, my above findings of non-infringement are based on

---

[8]However, the Federal Circuit also has stated that "[t]he substantial similarity test by its nature subsumes a doctrine of equivalents analysis." *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 Fed.Appx. 214, 217 (Fed. Cir. 2004).

difference that are not insignificant, and therefore apply equally under the doctrine of equivalents.

## VI.    INFRINGEMENT ANALYSIS OF PLAINTIFF'S UTILITY PATENT

In their Motion, Defendants argue that the "angle pusher" does not infringe because it has only one sidewall and one gusset.  [Defs.' Mov. Br., 7.]

At oral argument Plaintiff withdrew its claim that Defendants' angle model pushers infringed the '576 Patent.  [Hr'g Tr. 4:17-5:5.]  As such, Defendants' Motion is now moot as to this issue, and possible infringement of the "angle pusher" product with respect to the utility patent requires no further discussion in this Report and Recommendation.

## VII.    INVALIDITY

### A.    The Law Of Anticipation Under 35 U.S.C. § 102

"Anticipation is a question of fact.  However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."  *Smithkline Beecham Corp.* v. *Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005) (internal citation omitted).

A patent claim can be anticipated pursuant to 35 U.S.C. § 102(b) if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date on the application for patent in the United States."  35 U.S.C. § 102(b).  Whether a patent is invalid due to an on-sale bar in violation of 35 U.S.C. § 102(b) is a question of law based on underlying facts.  *Netscape Commc'ns Corp.* v. *Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).  Further, a patent may be invalid due to prior public use.  35 U.S.C. § 102(b).  "Public use includes 'any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation

of secrecy to the inventor.'"   *Netscape*, 295 F.3d at 1320. (quoting *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed.Cir.1996)).

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention."   *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed.Cir.2003) (citing *Lewmar Marine, Inc.* v. *Barient Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987)); *accord Smithkline*, 403 F.3d at 1343.   Additionally, "[f]or prior art to anticipate a claim 'it must be sufficient to enable one with ordinary skill in the art to practice the invention.'"   *Smithkline*, 403 F.3d at 1342 (quoting *Minn. Mining & Mfg. Co.* v. *Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)).   The determination of whether a prior art reference is enabling is a question of law based upon underlying factual findings.   *Id.*

"A conclusion that a section 102(b) bar invalidates a patent must be based on clear and convincing evidence."   *Netscape*, 295 F.3d at 1320.

### 1.   Anticipation Analysis Of Claim 1 Of The '576 Patent With Respect To The Daniels Pull Plow

Defendants' expert Nicholas Godici, a former Commissioner of Patents for the United States Patent & Trademark Office ("PTO"), has opined that claims 1, 2, 5 and 6 of the '576 Patent are anticipated by a containment plow fabricated by Robert Orsolini, a Chicago area metal fabricator, for Daniels Pull Plow, Inc., a Chicago area plow manufacturer.   [Godici Aff. ¶ 106.] According to Mr. Godici, the plow (hereinafter referred to as the "Daniels Pull Plow"] is a containment or box plow, designed to address the same problems as the '576 Patent.   [*Id.* ¶¶ 106-

36

107; Defs.' Mov. Br., 9.]   At the outset it is noted that whether prior art is analogous is irrelevant to the issue of anticipation.[9]

Mr. Daniels claims to have used the Daniels Pull Plow to plow parking lots and shopping plazas in the Chicago area for several years.  [Daniels Aff. ¶¶ 2, 8.]  Mr. Godici opines that the Daniels Pull Plow discloses each and every element of claims 1, 2, 5 and 6 of Plaintiff's '576 Patent exactly as claimed.  The Daniels Pull Plow is for moving materials and attachment to a vehicle.  According to Defendants, the Daniels Pull Plow includes a main blade with first and second ends, a top edge, bottom edge, and front and back surfaces.  The Daniels Pull Plow also has first and second side walls attached to and extending substantially perpendicularly from the ends of the main blade.  First and second gussets extend from the main blade to the side walls. [*See* Godici Aff. ¶ 106.]  The gusset is formed as a conic section of the type disclosed and illustrated in the specification of the '576 Patent in col. 5, lines 26-53.  Based on this analysis, Mr. Godici opines that claims 1, 2, 5, and 6 of the '576 Patent are invalid as being anticipated by the Daniels Pull Plow.  [Godici Aff. ¶ 106.][10]

Defendants do not rely upon the blueprint or photographs of the Daniels Pull Plow as being printed publications under 35 U.S.C. § 102(b).  Rather, Defendants rely upon the deposition testimony of both Messrs. Daniels and Orsolini as to the fabrication and use of the plow, and assert that the blueprint and photographs corroborate the testimony of the witnesses.  Thus, Defendants do not assert that the photographs and blueprint are invalidating prior art.

---

[9] *See State Contracting & Eng' g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1068 (Fed. Cir. 2003) ("The question of whether a reference is analogous art is not relevant to whether that reference anticipates. . . . [A] reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims") (quotations and internal citations omitted).

[10]The Godici Affidavit does not include a claim chart or analysis of the Court's Markman claim construction.

Indeed, they do not even contend that those materials are prior art. The issue thus is whether the testimony of the witnesses is sufficient to establish a public use or on-sale bar to overcome the presumption of validity by the clear and convincing evidence standard.

As an initial matter, Mr. Godici has no first-hand knowledge of the Daniels Pull Plow. He relies upon the testimony of Messrs. Daniels and Orsolini. Mr. Godici provides no admissible evidence going to the issue of validity. An affidavit supporting a summary judgment motion must be made on personal knowledge relating to facts that would otherwise be admissible. Fed. R. Civ. P. 56(c)(4). Here, Mr. Godici presents hearsay evidence about the Daniels' Pull Plow. This is insufficient to rebut the presumption of validity of the '576 Patent.

Mr. Orsolini claims to have fabricated the Daniels Pull Plow in the late 1970's and to have sold it to Mr. Daniels at that time. [Orsolini Aff. ¶¶ 1-8.] Mr. Daniels claims to have used the plow for several years thereafter. Both assert that the blueprint corroborates fabrication of the plow, and Mr. Daniels asserts that photographs corroborate use of the Daniels Pull Plow. Mr. Orsolini acknowledged at his deposition that the blueprint was an isometric drawing that did not contain details sufficient to construct a plow. It was one of four blueprints that allegedly were used for fabrication of the Daniels Pull Plow. Indeed, from Mr. Orsolini's testimony it is not clear exactly what the plow he fabricated looked like. At his deposition he suggested that the plow illustrated in the drawing may have been modified during manufacture of the Daniels Pull Plow.

Patents are presumed valid and the presumption may be rebutted only by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). I recognize that the Supreme Court this term is considering the viability and applicability of the

clear and convincing standard, but I find that the testimony of Mr. Orsolini, even with the blueprint, is insufficient to render claim 1 invalid on summary judgment.  Other genuine issues of material fact remain unresolved.  For one, Defendants' Motion is based in large part on oral testimony recalling events that occurred many years ago.  The corroborating evidence is an incomplete  set of four blueprints that may or may not represent the apparatus publicly used, and a series of blurry photographs.  Likewise, while Mr. Daniels testified that he used the plow for years, he was unable to fully corroborate his testimony.  He states that the plow was damaged in a fire and "scrapped," so there is no physical embodiment remaining.  [Daniels Aff. ¶ 9; Daniels Tr. 55:17-22.]  Mr. Daniels testified that he made additional versions based upon what Mr. Orsolini had fabricated and suggested that the subsequent products differed from what is shown in the blueprint.  [*See* Daniels Tr. 35:17-39:5.]  Daniels also testified that the plow was too large and heavy as fabricated by Mr. Orsolini, so there is at least a suggestion that whatever Mr. Orsolini fabricated was not usable.  [*Id*.]  Further, it is essentially impossible to tell from the photographs what the plow looked like.   As to Mr. Orsolini's testimony, based upon "recollection" of events that occurred long ago [Orsolini Aff. ¶ 4], absent corroborative evidence, the passage of time alone suggests that memories may not be totally accurate as to what was fabricated, what worked for its intended function, and what was used.  Just as Daniels scrapped the plow, Orsolini did not retain the drawings.  [Orsolini Aff. ¶ 9.]

Weighing the evidence and giving Plaintiff the benefit of all inferences as to remaining genuine disputes of material fact, it is recommended that the Court find Defendants have not shown by clear and convincing evidence that the Daniels Pull Plow anticipates claim 1 of the

'576 Patent, and that the Court deny Defendants' Motion as to anticipation of the '576 Patent by that device.[11]

### 2.    Anticipation Analysis Of The '576 Patent Claims With Respect To Tenco Snow Blower

William Leonard, also Defendants' expert, opines that claims 1, 2, 5 and 6 of the '576 Patent are anticipated by the Tenco snow blower.

As with the Daniels Push Plow, I must evaluate all evidence on summary judgment in light of Rule 56 of the Federal Rules of Civil Procedure, giving all inferences to the nonmovant. It is well settled that the party moving for summary judgment has the burden of demonstrating that the Rule 56(a) test -- "no genuine dispute as to any material fact" -- is satisfied and that it is entitled to judgment as a matter of law.  The moving party must come forward with affidavits or other admissible evidence.  If the moving party fails to do so, summary judgment must be denied even if the opposing party has presented no evidence in support of his allegations.  *See United States v. Pent-R-Books, Inc.*, 538 F.2d 519, 529 (2d Cir. 1976), *cert. denied*, 430 U.S. 906 (1977).

The evidence presented by Defendants in support of their Motion with respect to the Tenco snow blower consists primarily of the unsworn letter from Mr. Robert Nicholas, who is a manager at an airport where the Tenco snow blower was supposedly used since 1999.  The unsworn letter is addressed to "To whom it may concern."  It fails to indicate on its face that Mr. Nicholas has first-hand knowledge of the facts presented therein.  [O'Brien Decl., Ex. 13.]

---

[11]As a matter of law, if an independent claim is not invalid, its dependent claims also are not invalid because they contain all the limitations of the independent claim, plus at least one further limitation.  *Hartness Int'l, Inc. v. Simplimatic Eng'g, Inc.*, 819 F.2d 1100, 1108 (Fed. Cir. 1987).  Thus, there is no need to address the further limitations recited in the dependent claims at this time.

A trial court may not consider an unsworn statement on a motion for summary judgment. *DeMars v. O'Flynn*, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003); *see also Emerson Enters., LLC v. Kenneth Crosby New York, LLC*, 03-CV-6530 CJS, 2009 WL 3190445 (W.D.N.Y. 2009); *Pent-R-Books*, 538 F.2d at 529 (holding that "Rule 56, Fed. R. Civ. P., requires that the moving party show, on the basis of admissible evidence adduced from persons with personal knowledge of the facts, that there is no genuine issue as to any material fact.  Where this initial showing is not made, summary judgment will be denied, even though the party opposing the motion has submitted no probative evidence to support its position or to establish that there is a genuine issue for trial").

> By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury.  Courts usually treat written statements subject to the penalty of perjury as the equivalent of an affidavit for summary judgment.  To be considered in connection with a summary judgment motion, the rule requires that submissions in the form of statements be prepared as affidavits .... Failure to submit materials in this form will cause the submission to be disregarded by the court in its consideration of the pending motion.

11 Moore's Federal Practice, § 56.14(1)(b) (Matthew Bender 3d ed.).  A document's qualification as an affidavit is not determined by the presence or absence of "the stamp or seal of a notary." *Id.; see also, LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65 (2d Cir. 1999) (discussing requirements of declarations pursuant to 28 U.S.C. § 1746).

Here, Defendants have submitted several documents which are not affidavits and which do not otherwise qualify as admissible evidence.  Namely, Defendants have submitted an unsworn letter from Robert Nicholas.  [O'Brien Decl., Ex. 13.]  Mr. Nicholas does not state that he has first-hand knowledge of the facts set forth in his letter.  [*Id.*]  Mr. Nicholas does not state how long he has worked for Ithaca Tompkins Regional Airport.  [*Id.*]  Mr. Nicholas does not identify the custodian of these purported records.  [*Id.*]  Mr. Nicholas was not listed as a witness

by Defendants.  The unsworn letter is dated September 18, 2009 [*id.*] and was not produced by Defendants until after the close of business on the last day of discovery October 9, 2009.  The unsworn "letter" of Mr. Nicholas fails to meet the evidentiary standards of the Federal Rules of Evidence.  Other corroborative evidence offered by Defendants, specifically, an invoice dated December 7, 1999, has been submitted without a sponsoring witness, and is not admissible.  As a result, there is no admissible evidence to establish that the Tenco snow blower qualifies as prior art.

Therefore, with respect to the anticipation of claims 1, 2, 5 and 6 of the '576 Patent based on the Tenco snow blower, it is recommended that the Court find that Defendants have failed to sustain the requirements of Rule 56, Fed. R. Civ. P.

### B.       The Law Of Obviousness Under 35 U.S.C. § 103(a)

Alan Douglas, one of Defendants' expert, opines that each of the Design Patents is obvious in light of prior art, including the Daniels Pull Plow, either standing alone or in conjunction with the Avalanche snow removal apparatus.  [Douglas Aff. ¶ 47.]  Mr. Douglas further opines that a combination of the Avalanche plow and the gussets depicted in the Daniels Pull Plow would have led him as a design patent examiner to reject each of the three design patents.  [*Id.*]  Mr. Douglas testifies that the drawing of the plow fabricated by Mr. Orsolini, together with the testimony of Mr. Orsolini and Mr. Daniels, establishes that the apparatus was a box or containment style snow removal device of the type depicted in the Design Patents.  [*Id.*]  Further, Mr. Douglas opines that a combination of the Bonnell Push 'N Plow and the gussets depicted in the Daniels' Pull Plow also renders the Design Patents invalid for obviousness.  [*Id.* at ¶ 48.]

With respect to the utility patent, Defendants' expert Nicholas Godici opines that claims 3, 4, 7 and 8 of the '576 Patent are invalid because they are obvious in view of the teachings of the Daniels Pull Plow, taken with the teachings of U.S. Patent No. 3,557,850 to Owens.  [Godici Aff. ¶¶ 107-109.]

Another of Defendants' expert, William M. Leonard, opines that the claims of the '576 Patent are obvious in view of the Avalanche and Bonnell prior art materials, when considered in conjunction with the *Tenco* snow blower.  [Leonard Aff. ¶ 32.]  According to Mr. Leonard, the *Tenco* snow blower teaches that a wedge-shaped gusset may be used as a brace between a sidewall and a blade, whereas the Avalanche pusher has a downward depending post running from the main portion of the main blade to the lower edge of the sidewall.  [*Id.*]

The ultimate judgment of obviousness is a legal determination and summary judgment is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors."  *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398, 427 (2007).  Courts must also consider the "secondary" factors discussed in *Graham,* which include "'commercial success, long felt but unsolved needs, [and the] failure of others [to solve a problem] ….'"  *Id.* at 406 (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966)).  Unlike anticipation, where a single reference must disclose all claim elements, a party asserting obviousness may rely on more than one prior art reference to establish obviousness.  *See DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006).

Pursuant to 35 U.S.C. § 103(a), a patent may not be obtained even though the invention is not identically disclosed or described as set forth in Section 102 of Title 35, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter

as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  The following factors are specifically evaluated in determining obviousness:

> 1.      the scope and content of the prior art relied upon by the defendant;
>
> 2.      the differences, if any, between each claim of the patent that the defendant claims is obvious and the prior art;
>
> 3.      the level of ordinary skill in the art at the time the invention of the patent was made; and
>
> 4.      secondary considerations, such as commercial success, long felt but unresolved needs, failure of others, etc., that indicate that the invention was obvious or not-obvious.[12]

*KSR*, 550 U.S. at 406 (2007) (citing *Graham*, 383 U.S. at 17).

"Design patents are subject to the nonobviousness requirement of 35 U.S.C. § 103." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir. 2009).  With regard to a design patent, the hypothetical person of ordinary skill in the art is "the designer of ordinary capability who designs articles of the type presented."  *Avia*, 853 F.2d at 1563.

C.      **Obviousness Analysis**

1.      **Scope and Content of the Asserted Prior Art**

a.      **The Design Patents**

Regarding the Design Patents, Defendants rely principally on the expert affidavit of Mr. Douglas.  Mr. Douglas opines that the Design Patents are invalid based on the Daniels Pull Plow

---

[12]It is noted that Defendants have not presented any evidence of secondary considerations in their opening motion papers.

in conjunction with the Avalanche snow removal apparatus, and/or the combination of the Bonnell Push 'N Plow and the gussets depicted in the Daniels Pull Plow.  Regarding the scope and content of the prior art in the obviousness context, Mr. Douglas simply states that the Daniels Pull Plow "teaches the use of a triangular-shaped gusset with what appears to be a downward orientation running from the moldboard to the side plate." [Douglas Aff. ¶ 47.]  Mr. Douglas does not analyze the scope and content of the Avalanche snow plow or the Bonnell Push 'N Plow.  Mr. Douglas makes no further analysis of the scope and content of the prior art in this regard.

Nothing in the Douglas Affidavit establishes Mr. Douglas has first-hand knowledge of the Daniels Pull Plow.  Douglas is presumably relying on assertions made by Defendants.  Thus, a genuine dispute of material fact remains in dispute as to whether the Daniels Pull Plow is prior art and, if it is prior art, what is taught by it.

### b.   The Utility Patent

Regarding the '576 (utility) Patent, Defendants rely on the expert affidavits of Mr. Godici and Mr. Leonard.  Mr. Godici opines that the '576 Patent claims are anticipated or obvious in view of the Daniels Pull Plow.  [Godici Aff. ¶¶ 106-109.]  Mr. Leonard opines that the claims are obvious in view of the Avalanche snow plow and Bonnell considered with the Tenco snow blower.  [Leonard Aff. ¶ 32.]

As previously noted, Defendants have not shown that there are no genuine disputes of material fact as to whether the Daniels Pull Plow is prior art or that it actually possessed the features relied upon by Mr. Godici to establish invalidity.  [*See* Orsolini Dep. 24:10-22; Quesnel Expert Rep., 6-7.]  For example, the drawing of the Daniels Pull Plow illustrates only a single gusset having an indeterminable shape.  [Pl.'s Summ. J. Mot., Ex. L, Orsolini drawing 1001-3.]

Further, there is a genuine dispute of material fact regarding which version of the Daniels Pull Plow was publicly used, and whether the plow was modified from what is illustrated in the blue print before it was publicly used.  [Pl.'s Summ. J. Mot., Ex. I; Daniels Dep. 49:12-16.]

The evidence submitted in Defendants' Motion with respect to the Tenco snow blower includes the unsworn letter from Mr. Robert Nicholas, who is a manager at an airport where the Tenco snow blower was supposedly used since 1999.  The unsworn statement is addressed to "To whom it may concern" and fails to state that Mr. Nicholas has first-hand knowledge of the facts presented therein.  [O'Brien Decl., Ex. 13.]  As noted earlier, Defendants have failed to establish by clear and convincing evidence that the Tenco snow blower qualifies as prior art – or establish the exact scope and content of the Tenco snow blower documents.

<strong>2.      Differences Between Each Claim of the Patent and the Prior Art</strong>

Because Defendants have failed to establish the scope and content of the Daniels Pull Plow and the Tenco snow blower, it is not possible to assess the differences between the claims and the asserted prior art.

<strong>3.      Level of Ordinary Skill in the Art at the Time the Patented Invention Was Made</strong>

Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field.  *Ruiz* v. *A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000).  "Not all such factors may be present in every case, and one or more of them may predominate."  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 963-64 (Fed. Cir. 1986).

None of the Defendants' experts analyzes the level of ordinary skill in the art with regard to the issue of obviousness. This *Graham v. Deere* factor is unsettled, and even if it were to be settled, partial summary judgment of patent invalidity would be inappropriate for reasons stated above.

### 4.    Secondary Considerations

Evidence of secondary considerations must be considered if present. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). None of the Defendants' experts analyzes any secondary considerations, such as commercial success, long felt need, failure of others, etc. Plaintiff, on the other hand, points to alleged advantages to its design and Defendants' commercial success. [Dkt. No. 89, Pl.'s Opp'n, p. 20.] However, Plaintiff has made conclusory arguments regarding the secondary considerations. A nexus must be established between the secondary considerations and the claims. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986). Merely because a product is commercially successful is no guarantee that the success was attributable to the patented features. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). Significantly, Plaintiff has not pointed to the commercial success of its product, thus suggesting that perhaps factors other than the claimed features may have been responsible for the success of Defendants' products.

Plaintiff also points to supposed copying by Defendants as evidence of secondary considerations warranting a finding of non-obviousness, *i.e.*, Pro-Tech employee statements that a competitor had "copied " the Pro-Tech design, a Pro-Tech employee indicating that Degelman had "inspired" Pro-Tech, and Mr. Daniels statement that the products "looked the same." [Dkt.

No. 89, Pl.'s Opp'n, 21.]  This "evidence" is circumstantial and insufficient to prove as a matter of law that Defendants copied the patented products or a nexus to the claimed features.

As such, the evidence of secondary considerations provided by the parties is lacking.

### 5.    Conclusion

Each argument for the obviousness of the '576 Patent and the Design Patents is based, at least in part, on the Daniels Pull Plow and/or the Tenco snow blower.  None of Defendants' experts has sufficient personal knowledge about these devices to satisfy the clear and convincing standard or resolve all genuine disputes of material fact.  Similarly, documentary evidence as to each of these devices, and what was publicly used, is lacking.  The Defendants have failed to establish the scope and content of the Daniels Pull plow and the admissibility of the Tenco snow blower under Rule 56 and the Federal Rules of Evidence.

Perhaps at trial Defendants will be able to establish clearly and convincingly what exactly was fabricated by Mr. Orsolini and used by Mr. Daniels.  Likewise at trial Defendants may be able to establish that the Tenco snow blower is in fact prior art.  At this stage of the proceedings, with all inferences favoring Plaintiff, for reasons elaborated above, I am of the opinion that the record is not sufficient to allow me to recommend that any of the patents-in-suit are invalid as being obvious.  Therefore, it is recommended that Defendants' Motion for Partial Summary Judgment of invalidity of the patents-in-suit be denied.

## VIII.   CONCLUSION

In view of the above it is recommended that Defendants' Motion be denied in part and granted in part.  In particular, it is recommended that Defendants' Motion be:

1.     Denied as to non-infringement of the D'097 Patent and the D'129 Patent by the
         Pro-Tech accused SPL Loader Model, SPS Skid Steer Model, SPB Backhoe

   Model, IST Loader Model, IST Backhoe Model, IST Skid Steer Model, PBS Pull

   Back Model, and SPC Compact Model.

2.  Granted as to non-infringement, both literal and under the doctrine of equivalents,

   of the D'097 Patent and the D'129 Patent by the Pro-tech accused FPL Fold Out

   Model, SBL Switchblade Loader Model, Super Duty Loader Model SBB,

   Switchblade Backhoe Model, SBS Switchblade Skid Steer Model, and FTF

   Forklift Model.

3.  Denied as to non-infringement of the D'128 Patent by the Pro-Tech accused SPL

   Loader Model, SPS Skid Steer Model, SPB Backhoe Model, IST Loader Model,

   IST Backhoe Model, IST Skid Steer Model, PBS Pull Back Model, SPC Compact

   Model, FPL Fold Out Model, and FTF Forklift Model.

4.  Granted as to non-infringement, both literal and under the doctrine of equivalents,

   of the D'128 Patent by the Pro-Tech accused SBL Switchblade Loader Model,

   SSB Switchblade Backhoe Model, the SBS Switchblade Skid Steer Model, and

   the Super Duty Loader Model.

5.  Denied with respect to invalidity of the '576 Patent and the D'097, D'128, and

   D'129 Patents.

          Respectfully submitted,

          Joseph W. Berenato, III
          Special Master

May 27, 2011