## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| DEGELMAN INDUSTRIES, LTD, | : | |
| Plaintiff, | : | Civil Action No. 06-CV-6346 |
| | : | |
| v. | : | **REPORT AND** |
| | : | **RECOMMENDATION ON** |
| | : | **PLAINTIFF'S MOTION FOR** |
| PRO-TECH WELDING AND | : | **PARTIAL SUMMARY** |
| FABRICATION, INC. and | : | **JUDGMENT** |
| MICHAEL P. WEAGLEY, | : | |
| Defendants. | : | |
| | : | |

## I.    INTRODUCTION

Pursuant to the Court's Order of August 11, 2010 [Dkt. No. 118], the undersigned was appointed Special Master to, *inter alia,* issue a Report and Recommendation on the plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") as to the issues of design patent infringement and willful infringement.

Having considered the parties' respective submissions and the oral argument conducted on November 18, 2010, the following constitutes my Report and Recommendation on the Plaintiff's Motion.

## II.    BACKGROUND

The plaintiff Degelman Industries, Ltd. ("Plaintiff") moved this Court for an Order of partial summary judgment finding that the "Sno-Pusher" products of the defendants Pro-Tech Welding & Fabrication, Inc. ("Pro-Tech") and Michael P. Weagley (collectively "Defendants") infringe Plaintiff's United States Patents Nos. D478,097, D519,128, and D519,129 (hereinafter "the D'097 Patent," "the D'128 Patent," and "the D'129 Patent," respectively, collectively the

"Design Patents") pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff also seeks a finding of willful infringement.

Plaintiff based its Motion on its (1) Notice of Motion; (2) Memorandum of Law in Support of Partial Summary Judgment ("moving brief"); (3) Statement of Material Facts; (4) Declaration of Michael A. Oropallo with exhibits; and (5) Reply Brief.  On April 21, 2011, Plaintiff submitted supplemental papers consisting of a recent district court decision, *Mobile Hi-Tech Wheels v. Direct Tire & Wheel, Inc.*, Case No. 09-cv-07583 (C.D.C.A., Jan. 24, 2011) and a recently published advertisement of Defendants.

For the reasons that follow, it is recommended that the Court deny Plaintiff's Motion.

### III.   STATEMENT OF FACTS

Plaintiff asserts that it began to design and develop what would eventually become Plaintiff's "Degelman Strongbox" in 2002.  [Dkt. No. 77-2, Pl's. Mov. Br., 4.]  The Degelman Strongbox is a containment snow plow having two spaced wedge-shaped gussets.  *See, e.g.*, U.S. Patent No. 6,845,576 and the D'128 Patent.  Plaintiff has produced records which it purports establishes its conception and development of the wedge-shaped gussets embodied in the Degelman Strongbox dating back to at least February 2002.

According to Plaintiff, the Degelman Strongbox was the culmination of market research and internal development which resulted in a product employing the wedge-shaped gusset design.  In November 2002, Plaintiff filed for and eventually received the Design Patents for a snow moving apparatus having wedge-shaped gussets, among other features.  Plaintiff also procured a utility patent, U.S. Patent No. 6,845,576 ("the '576 Patent").  Plaintiff has not moved for partial summary judgment as to infringement of the '576 Patent.

In October 2002, Plaintiff sent out a mailing advertising its containment snow plow to customers and competitors in the industry.  [Dkt. No. 77-25, Oropallo Decl., Ex. V.]  Plaintiff exhibited models of the Degelman Strongbox to the public at a July 2003 Snow & Ice Management Association industry trade convention in Buffalo, New York.  [Sepaniak Dep. Tr. 47-49.]  Pro-Tech displayed a snow plow design at the same show.  Plaintiff asserts that the plow Pro-Tech displayed at the show copied the Degelman Strongbox, specifically its wedge-shaped gusset system.  [Dkt. No. 77-2, Pl. Mov. Br., 1-2.]

Plaintiff's Motion is not accompanied by any affidavits or declarations of experts in the field.  Rather, Plaintiff argues in its moving brief that an expert is not necessary on the issue of design patent infringement because the products at issue, *i.e.*, snow moving apparatus or "snow plows," are "consumer goods," and the ordinary observer is thus a member of the general public.  [*Id.* at 13.]  Plaintiff offers the testimony of Mr. Sepaniak, Mr. Greg Daniels, and Mr. Craig Geller who all allegedly saw the products at various trade shows and elsewhere and allegedly commented as to similarities between the respective commercial products of Plaintiff and Defendants.  Plaintiff also submitted photographs of the Pro-Tech SPL Loader, SPB Backhoe, SPS Skid Steer, ALB Angle, FPL Fold Out, SBL Switchblade Loader, Super Duty Loader, SBB Switchblade Backhoe, SBS Switchblade Skid Steer, IST Loader, IST Backhoe, IST Skid Steer, PBS Pull Back, SPC Compact, and FTF Forklift Models with the Oropallo Declaration.

In their opposition to Plaintiff's Motion, Defendants urge that commercial containment plows are not "consumer goods" and the test for design patent infringement requires evidence from "an ordinary observer of commercial containment plows."  [Defs.' Opp'n § I.]  As such, Defendants assert that Plaintiff has employed an improper standard and therefore failed to establish design patent infringement by evidence sufficient to warrant summary judgment.

Defendants also offer several documents that they allege constitute or corroborate prior art, and also introduce related testimony in an effort to support their position of non-infringement. [Defs.' Opp'n § I.A.]

On the issue of willful infringement, Defendants assert that Plaintiff has failed to meet its burden to establish willful infringement by clear and convincing evidence. Defendants also point to the October 22, 2009 affidavit of the defendant Michael P. Weagley as evidence that he independently developed the design for the accused products and the wedge-shaped gussets, and that neither of the Defendants copied the Plaintiff's design. At oral argument, Plaintiff asserted that Mr. Weagley's Affidavit should be disregarded as it was self-serving and not corroborated, and thus could not go to the issue of willfulness. [Hr'g Tr. 6:8-7:22, 121:11-122:3.]

## IV.     THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Avia Group Int'l Inc., v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988); *see also Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004) ("[i]n a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact … or when the non-movant cannot prevail on the evidence submitted when viewed in a light most favorable to it"). Summary judgment may be granted on all or a portion of a claim or defense. Fed. R. Civ. P. 56(a).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1366 (Fed. Cir. 2001). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrell*, 477 U.S. 317, 323 (1986) (citation omitted); *Glaverbel Societe Anonyme, Inc. v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1560 (Fed. Cir. 1995).

Bare assertions and conclusions regarding a party's understandings, beliefs, or assumptions are not sufficient to withstand a motion for summary judgment, and an opposing party may not rest upon mere allegation or denials in its pleadings. Rather, he or she must present affirmative evidence showing that a genuine issue of material fact exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

For summary judgment purposes, all evidence is to be construed in the light most favorable to the non-movant, and every justifiable inference must be drawn in that party's favor. *McClellan* v. *Smith*, 439 F.3d 137, 144 (2d Cir. 2006); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319 (Fed. Cir. 2010).

## V.    INFRINGEMENT ANALYSIS OF PLAINTIFF'S DESIGN PATENTS

Under 35 U.S.C. § 171, "[w]hoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." The statute promotes innovation in industrial design leading to the improved appearance of products, not their functional utility. Other sections of the patent statute apply equally to design patents, including those relating to the presumption of patent validity. 35 U.S.C. § 282. Unlike utility patents, however, design patents consist of a single claim, shown

through one or more drawings that depict the ornamental aspect(s) of the design. *See Contessa Food Prods. v. Congra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[a] patented design is defined by the drawings, not just by one feature of the claimed design").

In determining whether a patent has been infringed, the court conducts a two-step analysis: "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Cybor Corp.* v. *Fas Techs. Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (citation omitted). The comparison carried out in the second step involves a determination as to whether the construed claim and the accused product are "substantially the same." *Elmer* v. *ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). The court should consider "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc.* v. *Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (*en banc*).

In general, infringement in a design patent case is a question of fact that the patentee must prove by a preponderance of the evidence. *L.A. Gear v. Thom McAn Show Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) (citation omitted); *Egyptian Goddess*, 543 F.3d at 679. However, where no reasonable trier of fact could conclude that the patentee has met his burden, summary judgment is appropriate. *Egyptian Goddess*, 543 F.3d at 683. Plaintiff has failed to meet its burden for reasons explained below.

The Federal Circuit recently significantly clarified both steps of the design patent infringement analysis in its *en banc* decision in *Egyptian Goddess*. First, the Federal Circuit discouraged the construction of a design patent claim through a detailed verbal description of the claimed design. *Egyptian Goddess*, 543 F.3d at 679. Second, the Federal Circuit rejected the so-

called "points of novelty" analysis.  *Id.* at 678.  After *Egyptian Goddess*, the comparison step of

the design patent infringement test is determined from the view point of the "ordinary observer."

The ordinary observer test was established by the Supreme Court in *Gorham Co. v. White*, 81

U.S. 511 (1871), which provides:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually
> gives, two designs are substantially the same, if the resemblance is such as to
> deceive such an observer, inducing him to purchase one supposing it to be the
> other, the first one patented is infringed by the other.

*Gorham*, 81 U.S. at 528.

In *Egyptian Goddess*, the Federal Circuit divided cases of design patent infringement into

two categories:  those where the claimed and accused designs are "sufficiently distinct" and

those where they are not "plainly dissimilar."  *Egyptian Goddess*, 543 F.3d at 678.  In instances

in which the claimed design and the accused design are "sufficiently distinct," it is clear without

more that the patentee has not met its burden of proving the two designs would appear

substantially the same to the ordinary observer.  *Id.*  In this situation, consideration of the prior

art is not required.  *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357,

362 (S.D.N.Y. 2009), *aff'd*, 374 F.App'x. 956 (Fed. Cir. 2010).

The second category is described in *Egyptian Goddess* as follows:  "In other instances,

when the claimed and accused designs are not plainly dissimilar, resolution of the question

whether the ordinary observer would consider the two designs to be substantially the same will

benefit from a comparison of the claimed and accused designs with the prior art….  Where there

are many examples of similar prior art designs …, differences between the claimed and accused

designs that might not be noticeable in the abstract can become significant to the hypothetical

ordinary observer who is conversant with the prior art."  *Egyptian Goddess*, 543 F.3d at 678.

The Federal Circuit also emphasized that although "the burden of proof as to infringement remains on the patentee," the burden of production of comparison to the prior art is on the accused infringer "if the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement." *Id.* at 678.

**A.    Step 1:  Claim Construction**

As a general matter, courts should not treat the process of design patent claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents. *Egyptian Goddess*, 543 F.3d at 679-80; *Degelman Indus., Ltd. v. Pro-Tech Welding, Inc.*, 630 F. Supp. 2d 273, 282 (W.D.N.Y. 2008).

The Court has already construed the Design Patents as follows:

| Design Patent | Court's Claim Construction |
|---|---|
| D'097 | "the overall visual impression of the ornamental design of a snow moving apparatus with gusset as set forth in the drawings of the patent" |
| D'128 | "the overall visual impression of the ornamental design of a gusset used in a snow moving apparatus as set forth in the drawings of the patent" |
| D'129 | "the overall visual impression of the ornamental design of a snow moving apparatus with gusset as set forth in the drawings of the patent" |

[Dkt. No. 66, Claim Construction Decision.]

The parties do not dispute the Court's claim constructions.

**1.    The D'097 Patent**

The D'097 Patent includes eight (8) drawings, Figures 1-8, respectively illustrating front perspective, rear perspective, front elevation, rear elevation, bottom plan, top plan, left side, and right side views.  In the interest of brevity, only Figures 1 and 7 of the D'097 Patent showing the

patented design in its front perspective view and left side view, respectively, are reproduced below for explanatory purposes.



Figure 1                                              Figure 7

All features of the snow moving apparatus, *e.g.*, the two gussets, the wear shoes, the moldboard, and side plates, are illustrated in solid lines in the D'097 Patent.  No feature of the D'097 Patent is shown in broken lines.

A design patent is limited to what is illustrated in the drawings.  *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); *Rockport Co. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 192 (S.D.N.Y. 1999).  Structure that is not part of the claimed design, but shows the environment in which the design is associated, may be represented in the drawings by broken lines.  *In re Zahn*, 617 F.2d 261 (CCPA 1980); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001).  Because no lines in the drawings of the D'097 patent are broken, all of the lines from all eight (8) figures form part of the claimed design and constitute part of "the overall visual impression of the ornamental design of a snow moving apparatus" referred to in the Court's claim construction.

2.    **The D'129 Patent**

The D'129 Patent includes eight (8) drawings, Figures 1-8, respectively illustrating the front perspective, rear perspective, front elevation, rear elevation, bottom plan, top plan, left side, and right side views.  In the interest of brevity and for the purpose of comparing the D'129 Patent claim to the D'097 Patent claim, only Figures 1 and 7 of the D'129 Patent are reproduced below showing the patented design in the front perspective view and the left side view, respectively.



Figure 1                                      Figure 7

The views of Figures 1-8 of the D'129 Patent correspond substantially to those of the D'097 Patent.  There are, however, differences, including the use of broken lines to illustrate the wear shoes in the figures of the D'129 Patent.[1]  As noted above, broken lines mean that those features are shown for environmental effect only, and do not constitute part of the claimed design or "overall visual impression" as construed by the Court.

---

[1]This is not to say there are not more subtle differences, other than the use of broken lines, between the drawings of the D'097 Patent and the D'129 Patent.  All differences have been considered in the preparation of this Report and Recommendation.

### 3.     The D'128 Patent

The D'128 Patent includes four (4) drawings, Figures 1-4, respectively illustrating front perspective, front elevation, bottom plan, and top plan views of the snow moving apparatus. Figures 1 and 2 of the D'128 Patent illustrating the front perspective view and the front elevation view, respectively, are reproduced below.



Plaintiff argues that the D'128 Patent claims the overall visual impression of a snow moving apparatus and "directs the observer's attention to the wedge-shaped gusset." [Dkt. No. 77-2, Pl. Mov. Br., 9.]  Additional structural features shown in solid lines in the D'097 and D'129 Patents are shown in broken lines in the D'128 Patent.  Structure that is not part of the claimed design, but shows the environment in which the design is associated, may be represented in the drawings by broken lines.  *In re Zahn*, 617 F.2d at 261; *Door-Master*, 256 F.3d at 1313.  The D'128 Patent illustrates and thus claims the overall visual and ornamental appearance of the gussets in the environment of a snow moving apparatus, with the gussets being disposed on opposite sides of the apparatus.  Except for the two gussets, all other structures, *e.g.*, the wear shoes, the moldboard, and side plates, are shown in broken lines and for environmental effect.

Plaintiff asserted at oral argument that the D'128 Patent requires only a single gusset. [Hr'g Tr. 19:6-16.]  While the Court's claim construction referred to a "gusset" in the singular, it does so in the context of "a snow moving apparatus as set forth in the drawings of the patent."

Figures 2-4 of the D'128 Patent illustrate two gussets respectively arranged at opposite ends of a snow moving apparatus.  Figures 2-4 are part and parcel of the claim and the presence of two gussets in the drawings cannot be ignored.  Further, it is readily apparent from an inspection of Fig. 1 and a comparison of Fig. 1 to Figs. 2-4 that Fig. 1 illustrates only a single gusset because the angle of the perspective view in which the snow moving apparatus is observed in Fig. 1 leaves the other gusset hidden from view.  This conclusion is the only one that is consistent with the other drawings (Figs. 2-4), which each illustrate two oppositely disposed gussets.  Thus, for purposes of the infringement analysis, the patented design has been construed as requiring a gusset at each of the opposite ends of the snow moving apparatus, as illustrated in Figs. 2-4 of the D'128 Patent.

### B.    Step 2:  The "Substantial Similarity" Analysis

#### 1.    Plaintiff's Evidence Compared Commercial Embodiments

After construction of the design patent's claim, the accused product is to be compared to the construed claim, not the patent owner's commercial embodiment.  *Elmer* v. *ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (stating that proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment).

Plaintiff's moving papers principally compare the parties' respective commercial embodiments to one another, and fail to include expert testimony or any sworn statement from an expert comparing Defendants' accused products[2] to Plaintiff's Design Patents.  At oral argument, Plaintiff's counsel confirmed this fact stating, "the best evidence that we have in this case - - *in*

_____

[2]Indeed, Plaintiff's motion papers do not identify any particular products accused of infringement and, instead, seem to assume that all of Defendants' plows infringe all of Plaintiff's Design Patents.

*fact, the only evidence that we have in this case - -* and it's not rebutted, is the evidence of members of Pro-Tech and third parties, independent witnesses that have specifically said that this is an identical design." [Hr'g Tr. 8:13-21 (emphasis added).]  While Plaintiff made reference to an affidavit from Dr. Quesnel [Hr'g Tr. 21:2-12] at the oral argument, no affidavit from Dr. Quesnel was submitted with Plaintiff's Motion.[3]  Further, for reasons explained in my separate Report and Recommendation on Expert Opinions and Reports, Plaintiff has not demonstrated that Dr. Quesnel is qualified to apply the ordinary observer test to the claimed snow removal devices.  An ordinary observer is "a purchaser of things of a similar design," or "one interested in the subject … who, though not an expert, has reasonable familiarity with such objects …." *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933). Dr. Quesnel does not use or purchase snow removal products [Dkts. No. 89-2, Ex. A, Quesnel Tr. 56:21-57:5] and has never owned, operated or evaluated a snow pusher or snowplow [*id.*].

Plaintiff attempts to introduce testimony of Mr. Steven S. Sepaniak [Dkt. No. 77-11, Ex. H, Sepaniak Dep. Tr. 47-49], Mr. Greg Daniels [Dkt. No. 77-12, Ex. I, Daniels Dep. Tr. 73-74], and Mr. Craig Geller [Dkt. No. 77-13, Ex. J, Geller Dep. Tr. 87:20-25] to demonstrate that each of these witnesses saw Defendants' products at various tradeshows and in the marketplace, and were confused as to their source.  The testimony compares the parties' respective commercial products.  The witnesses fail to compare any of the accused products to the Design Patents. While Plaintiff possibly could have established that its products observed by these witnesses embodied its Design Patent claims and thus a comparison of commercial products was sufficient, it submitted no such evidence.

_____

[3]Defendants' attorney, at oral argument, noted that "[t]here is no Quesnel affidavit. There is [*sic*] Quesnel [R]eports which are unsworn, which were attached as exhibits to our papers …." [Hr'g Tr. 27:6-8.]

Further, for the purpose of summary judgment, the testimony of these witnesses must be viewed in a light most favorable to the non-movants, *i.e.*, Defendants.  Viewed as such, the testimony of Sepaniak, Daniels, and Geller is ambiguous inasmuch as it relates to two otherwise unidentified products which the witnesses believed to be similar in appearance to Plaintiff's commercial product.  The evidence is also disputed substantively.  Defendants' expert, Jerre Heyer, compared each figure of each Design Patent with corresponding views of each accused product.  Mr. Heyer's affidavit sets forth in detail a comparison between the claimed designs and the accused products that raises genuine disputes of material fact.

In short, Plaintiff failed to submit adequate admissible, competent evidence that compares the Design Patents to Defendants' accused products.  The witness statements cited by Plaintiff are insufficient to carry the Plaintiff's burden.  Even if Plaintiff had carried its burden, Mr. Heyer's affidavit contains affirmative evidence showing that genuine disputes of material fact exist for the jury's resolution.

## 2.  <u>Plaintiff Erroneously Relies On "Point Of Novelty" Test</u>

Plaintiff's design patent infringement analysis, at least with regard to the D'097 and D'129 Patents, is premised upon the rejected point-of-novelty test by virtue of Plaintiff's focus on a single claimed figure.  The single feature on which Plaintiff focuses its analysis is the gussets, as demonstrated by the excerpt from its moving brief reproduced below:

> any ordinary observer would find that the Sno-Pusher [accused] products have a substantially similar appearance when viewed as a whole and, in fact, an even more discerning observer looking at the gussets on each would reach the inescapable conclusion that the designs are identical. Therefore, [Plaintiff] Degelman is entitled to summary judgment motion that have [*sic*] infringed the patented designs as a matter of law.

[Dkt. No. 77-2, Pl's. Mov. Br., 12.]

14

Although Plaintiff claims to view the designs "as a whole," its analysis is clearly focused on the gussets.  [*See* Hr'g Tr. 10:16-21.]  In rejecting the "point of novelty" test in favor of the "ordinary observer" test, the Federal Circuit emphasized that the patented design must be considered as a whole.  *Egyptian Goddess*, 543 F.3d at 677; *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1245 (Fed. Cir. 2009).

At oral argument and in its motion papers, Plaintiff argued that the infringement analysis required not only a review of the Design Patents and the accused products, but that the comparison be viewed through the lens of the prior art.  While the *Egyptian Goddess* case discusses consideration of the prior art where the claimed and accused designs are not "plainly dissimilar," 543 F.3d at 678, the Federal Circuit made clear that the role of the prior art is to enable the court to consider seemingly small or minor details that differentiate a patent from the prior art.

> Where there are many examples of similar prior art designs …, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

*Id.* at 678.

In others words, where the art is crowded, seemingly small or minor differences might be important to the "ordinary observer" when conducting the infringement analysis.  Plaintiff seems to argue that the Court should simply determine whether the accused product was closer to the patented design than to the prior art.  Plaintiff repeatedly points to the gussets of its claimed designs and to either the lack of same in the prior art or to the dissimilar nature of the gussets in the prior art.  Even if the gussets were novel,[4] under *Egyptian Goddess* their novelty would not

---

[4]The Design Patents are not evidence that Plaintiff invented the gussets, and Plaintiff fails to present evidence that it is the inventor of the gusset.

justify the disregard of the remaining claimed components of the snow moving apparatus designs in carrying out the second step of the infringement analysis.  Plaintiff's analysis fails to consider the Design Patents and the accused products as a whole, or to ask whether an ordinary observer, familiar with the prior art, would be deceived into believing that the accused products (and not just the gussets) originated with the patent owner.  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

At least with respect to the D'097 Patent and the D'129 Patent, Plaintiff has failed to properly compare claimed features other than the gussets.  It is incumbent upon Plaintiff to consider the patented design as a whole and not to focus on a single feature of the overall design. *See Egyptian Goddess*, 543 F.3d at 677.  By focusing on a single feature, specifically the gussets, Plaintiff has mistakenly conducted a "point-of-novelty" analysis rejected by the Federal Circuit. *See Contessa*, 282 F.3d at 1379 (holding that the district court erred by failing to analyze features of Figure 4 in its analysis).  This focused analysis on a single feature is in direct contradiction to the Court's claim constructions, at least with respect to the D'097 Patent and the D'129 Patent, which state that the respective claims of these patents are to be construed as "the overall visual impression of the ornamental design of a snow moving apparatus with gusset."

### 3.   Plaintiff Fails To Present A Figure-By-Figure Analysis By An Ordinary Observer

The design patent infringement analysis must involve a figure-by-figure review of the claimed design and comparable views of each accused product.  *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010); *Wing Shing*, 665 F. Supp. 2d at 368 (stating that failure by an expert to examine all views when opining on infringement is "problematic" and "at best conclusory"); *Contessa*, 282 F.3d at 1378 (stating that design infringement analysis must

include a review of all figures of a design patent).  In *Contessa Food Products, Inc.*, the Federal

Circuit held that

> [t]he absence of any consideration or comparison of the features of the [design] depicted in Figure 4 in the district court's analysis of 'the competing products' … reflects that [this view] of the patented … design was not part of the infringement analysis.  We conclude that this omission was erroneous.

*Id.* at 1379.  The *Contessa* court reversed a decision where the district court failed to analyze all

of the design patent drawings.  Indeed, the *Contessa* court specifically held that

> the 'ordinary observer' analysis is not limited to the ornamental features of a *subset* of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent.

*Id.* (emphasis added).

Plaintiff's Motion is accompanied by the Oropallo Declaration, which includes

photographs of accused models from views shown in the Design Patents.  However, Plaintiff

does not offer expert testimony as to how similarities and differences between these photographs

and the Design Patents would be perceived to an ordinary observer.

Plaintiff has argued that expert testimony is not necessary for carrying out an

infringement analysis of Plaintiff's Design Patents and the accused products because the

technology at issue, a snow moving apparatus, is a "simple consumer product," and the ordinary

observer is the general public. [Dkt. No. 78-3, 2.][5]  However, the Federal Circuit has defined the

"ordinary observer" as:

> not any observer, but one who, with less than the trained facilities of the expert, is 'a purchaser of things of similar design,' or 'one interested in the subject' one who, though not an expert, has reasonable familiarity with such objects, and is capable

---

[5]For example, Plaintiff states, "neither the Court, nor a jury … needs an expert to help it with its aesthetic observation.  Both the Court and the jury are more than qualified as ordinary observers of snow plows, and to assess whether the overall ornamental features appear similar." [Dkt. No. 89, Pl.'s Opp'n, 2.]

> of forming a reasonable judgment when confronted with a design therefor as to whether it presents to his eye distinctiveness from or similarity with those which have preceded it.

*Arminak*, 501 F.3d at 1322.

Defendants have contended that the products in this case differ markedly from ordinary consumer goods, such as the coffee makers of *Wing Shing*, because the ordinary observer of commercial containment plows is not the same as an average retail shopper of, for example, a coffee maker.  Defendants' evidence leads me to conclude that the ordinary consumer of the type of snow moving apparatus claimed in the Design Patents is more discerning than an average retail shopper.  According to the record, containment plows are not "consumer goods" of average consumers, even for those average consumers who live in upstate New York and likely will constitute at least part of the jury pool.  I note that a number of the affiants and experts in this case seemingly have never operated, sold or purchased a containment plow or things of similar design.

Plaintiff has not demonstrated what "reasonable judgment" an ordinary observer would form when confronted with the claimed designs and the accused products.  Neither the Court nor I, with little to no expertise in this technological field or in purchasing containment plows or things of similar design, are qualified to apply the ordinary observer test without the assistance of expert testimony.  The absence of expert testimony or from someone knowledgeable in the field setting forth an ordinary observer's view-by-view comparison of the evidence is fatal to Plaintiff's Motion.

### 4.    Plaintiff Fails To Separately Analyze Each Design Patent

Finally, Plaintiff acknowledged at oral argument that its three Design Patents were all of different scope, even though all are directed to ornamental features of a snow moving apparatus.

[Hr'g Tr. 49:3-15.]  Because the Design Patents are of different scope, infringement of one does not necessarily denote infringement of the others.[6]  Because Plaintiff has applied the same point-of-novelty infringement analysis to each of the Design Patents, Plaintiff has failed to meet its burden under Rule 56 to establish infringement of any of the Design Patents by a preponderance of the evidence.

For these reasons stated above, I recommend that the Court deny Plaintiff's Motion as to infringement of the Design Patents.

## VI.    THE ISSUE OF WILLFUL INFRINGEMENT

Should the Court decide to accept my recommendation above that partial summary judgment as to infringement of the Design Patents should be denied, then Plaintiff's Motion for partial summary judgment as to willful infringement will be rendered moot.  In the event that the Court declines my recommendation, I offer the following findings for the Court's consideration with respect to the issue of willful infringement.

As set forth by the Federal Circuit, "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent… . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

---

[6]"It would be our submission that almost all of them infringe the other two patents in varying degrees." [Hr'g Tr. 22:17-19.]

In its Opposition, Defendants submitted the Affidavit of Mr. Weagley, which contained assertions that he was unaware of the Plaintiff's products and that he designed the accused products in an effort to improve upon Pro-Tech's existing snow plow products.  Plaintiff argues that the Weagley Affidavit should not be considered because it is self-serving and lacks corroboration.  While the Weagley Affidavit arguably may be self-serving from Plaintiff's point of view, that alone does not make it inadmissible.  Likewise, that it may lack corroboration does not make it inadmissible.  Defendants are not contending that they developed their products prior to Plaintiff's development efforts.  The issue is not priority, where corroboration is required. *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002).  Rather, the issue is whether Defendants acted in reckless disregard of the Design Patents.  Plaintiff has not established, for example, that Defendants were aware of their products or the Design Patents.  While Plaintiff argues that it distributed promotional materials about its products to its customers, one of whom was Pro-Tech, it was unable to state with certainty at oral argument that Defendants did, in fact, receive that information.

While Plaintiff may find Defendants' explanation implausible, it is for the jury to decide whether Mr. Weagley is to be believed.  His Affidavit calls into question how Defendants' products were developed and whether Defendants' actions were objectively unreasonable.  There is a genuine dispute of material fact on that issue, such that summary judgment is not warranted.

## VII.   CONCLUSION

Genuine disputes of material fact exist regarding the similarity between Defendants' accused products and the designs illustrated in Plaintiff's Design Patents.  Similarly, genuine disputes of material fact exist regarding Defendants' knowledge of Plaintiff's patents and

products and thus as to whether they proceeded objectively recklessly.   It is therefore recommended that the Court deny Plaintiff's Motion.

Respectfully submitted,

Joseph W. Berenato, III
Special Master

May 27, 2011