UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEGELMAN INDUSTRIES, LTD, | : | |
| Plaintiff, | : | Civil Action No. 06-CV-6346 |
| | : | |
| v. | : | |
| | : | |
| | : | **REPORT AND** |
| PRO-TECH WELDING AND | : | **RECOMMENDATION ON** |
| FABRICATION, INC. and | : | **PLAINTIFF'S MOTION TO** |
| MICHAEL P. WEAGLEY, | : | **STRIKE THE DECLARATIONS** |
| Defendants. | : | **OF DONALD W. O'BRIEN, JR.** |
| | : | |

## I.    INTRODUCTION

Pursuant to the Court's Order of August 11, 2010 [Dkt. No. 118], the undersigned was appointed Special Master to, *inter alia*, issue a Report and Recommendation on the Motion of plaintiff Degelman Industries Ltd. ("Plaintiff") to strike the Declarations of Donald W. O'Brien, Jr. [Dkt. Nos. 83, 91, and 92] under Rule 56(e) of the Federal Rules of Civil Procedure.

Having considered the parties' respective submissions and conducted oral argument on November 18, 2010, the following constitutes my Report and Recommendation regarding the issues presented in Plaintiff's Motion.

## II.    BACKGROUND

Plaintiff brought this action accusing the defendants Pro-Tech Welding & Fabrication, Inc. ("Pro-Tech") and Michael P. Weagley (collectively "Defendants") of infringing Plaintiff's utility patent U.S. Patent No. 6,845,576 entitled "Materials Moving Blade" ("the '576 Patent") and design patents U.S. Patent Nos. D478,097 ("the D'097 Patent"), D519,128 ("the D'128

1

Patent"), and D519,129 ("the D'129 Patent"), each entitled "Snow Moving Apparatus" (collectively the "Design Patents"). Plaintiff moved for partial summary judgment on the ground that the Design Patents were infringed by snow pusher products manufactured and sold by Defendants.[1]

Defendants moved for partial summary judgment of non-infringement and invalidity. Defendants also filed three separate Declarations of Donald W. O'Brien, Jr. ("O'Brien Declarations") with exhibits [Dkt. Nos. 83, 91, and 92] in support of Defendants' motion for partial summary judgment, Defendants' opposition to Plaintiff's motion for partial summary judgment, and Defendants' opposition to Plaintiff's motion to preclude, respectively.

The O'Brien Declarations are submitted by Donald W. O'Brien, Jr., an attorney representing Defendants. In his Declarations, which total more than 60 pages, Mr. O'Brien provides roadmaps for supporting findings in favor of Defendants' motions and oppositions as to issues of non-infringement, invalidity, and admissibility of evidence. For example, Mr. O'Brien's Declaration on Defendants' motion for partial summary judgment points to evidence of record such as the patents-in-suit [*see* Dkt. No. 83 ¶¶ 7-9], expert reports and affidavits [*see* Dkt. No. 83 ¶¶ 15, 21-22, 27-30, 34, 37], and deposition transcript excerpts [*see* Dkt. No. 83 ¶¶ 7-9, 24]. However, inextricably intertwined in these roadmaps is Mr. O'Brien's commentary and extrapolation of the evidence and conclusions as to witness qualifications[2] and the ultimate determinations of non-infringement[3] and invalidity.[4]

---

[1] During the oral argument, Plaintiff withdrew its partial summary judgment motion as to one of the accused products known as the ALB Angle Model. [Hr'g Tr. 4:17-5:5.]

[2] For example, the O'Brien Declaration in support of Defendants' partial summary judgment motion concludes, *inter alia*, that one of Defendants' witnesses, Jerre Heyer, "qualifies as an ordinary observer" and that his "qualifications as an ordinary observer are unimpeachable,"

According to Defendants, attorney declarations serve as vehicles to place before the Court relevant documents, "a discussion of the background of the proceedings, a summary of the parties' respective positions, characterizations of the exhibits being offered, contextual information and references to evidence in the record which support the declarant's position or rebut that of the opposing party" with respect to the parties' respective summary judgment motions. [Dkt. No. 103, Defs.' Opp'n, 1-2.] Defendants assert the information contained in the O'Brien Declarations was included to aid the Court, and that the Declarations spare the Court the trouble of searching the voluminous record to ascertain the parties' respective positions and the evidence in the record to support or refute those positions. [*Id.* at 7.] In the alternative, Defendants submit that in the event the Court should find any information contained in the O'Brien Declarations to be improper, the Court should simply "disregard" this improper information as opposed to striking the Declarations in their entireties. [*Id.* at 9.]

Plaintiff asserts that the O'Brien Declarations are "replete with instances of conjecture, surmise, and bald assertions requesting that the Court rule in Defendants' favor." [Dkt. No. 90, Pl's. Memo., 5.] Plaintiff also asserts that the O'Brien Declarations amount to expert testimony and improperly opine on the ultimate issues of validity and infringement. [*Id.* at 6-7.] Plaintiff

---

[Dkt No. 83 ¶¶ 11 and 13], whereas Plaintiff's witness Dr. Quensel "does not qualify as an ordinary observer" [*id.* at ¶ 48] and Plaintiff's witness Mr. Dannible "missed or consciously avoided several keys steps in [his] analysis" [*id.* at ¶ 56].

[3]For example, the O'Brien Declaration in support of Defendants' partial summary judgment motion concludes that "here, the evidence establishes, as a matter of law, that there has been no infringement of the design patents, [and] summary judgment is appropriate" [Dkt. No. 83 ¶ 14] and that "dissimilarity between the design patents and the allegedly infringing products is consistent across the entire product line" [*id.* at ¶ 17].

[4]Mr. O'Brien concludes that "the Daniels pull plow modified by Bonnell's *Push 'n Plow* … also renders the design patents invalid for obviousness." [Dkt. No. 83 ¶ 35].

also objects to the O'Brien Declarations as an improper "back-door" tactic employed by Defendants to circumvent the page limits of their summary judgment briefs. [*Id.* at 2 n.2]. Plaintiff submits that the Court should strike the O'Brien Declarations and all referenced exhibits in their entireties.

### III. APPLICABLE LAW

Rule 56(c), Fed. R. Civ. P., states that affidavits and declarations made in support of motions under Rule 56(c) "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(e), Fed. R. Civ. P. The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin* v. *Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Therefore, a motion to strike is appropriate if documents or affidavits submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory or incomplete statements, or evidence that has not been properly authenticated. Rule 56(e), Fed. R. Civ. P.; *see also Dedyo v. Baker Eng'g New York, Inc.*, No. 96 Civ. 7152, 1998 U.S. Dist. LEXIS 132 *12-13, 1998 WL 9376 *4 (S.D.N.Y. Jan. 13, 1998); *Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*, No. Civ. A. CV-06-3951 (DGT), 2007 U.S. Dist. LEXIS 71083 *11-12, 2007 WL 2815741 *4 (E.D.N.Y. Sep. 25, 2007).

An attorney declaration or affidavit is generally used to provide the courts with documents and other evidence, for purposes of establishing a record, and should not be used as a "vehicle to lobby the court." *Internet Law Library, Inc. v. Southridge Capital Mgmt., L.L.C.*, No. 01 Civ. 6600 (RLC), 2005 U.S. Dist. LEXIS 32299 *9, 2005 WL 3370542 *3 (S.D.N.Y. Dec. 12, 2005) (granting motion to strike attorney affidavit because "[a]n attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal

vehicle to lobby the court") (citing *Universal Film Exchs., Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4, 5 (S.D.N.Y. 1965)).[5] Therefore, if a declaration improperly includes unsupported facts, legal arguments, or evidence that is not otherwise admissible, it may be stricken at the court's discretion. *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (upholding decision to strike affidavit which "more resembled an adversarial memorandum than a *bona fide* affidavit"); *Universal Film Exchs., Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5-6 (S.D.N.Y. 1965).

Defendants assert that *Internet Law Library* is not on point because in that case the attorney affidavit was submitted in response to a non-existent motion. However, I am not persuaded that *Internet Law Library* is distinguishable on this ground, given that the court considered the affidavit as if it had been properly filed, stating that "even if the submission of the affidavit was appropriate, the contents are not." *Id.*, 2005 WL 3370542 at *3. I am also not persuaded by the Defendants' attempt to distinguish *Universal Film* either. Many of Defendants references to specific documents are Defendants' interpretation of the evidence, rather than reproductions of evidence. Also, not all of Mr. O'Brien's statements reference the record. As the *Universal Film* court explained, "I know of no reason why the court should be compelled to do the sifting and unscrambling which would be required to ascertain the facts in view of the plain command in Rule 56." *Id.*, 37 F.R.D. at 6.

---

[5]The *Internet Law Library* court went on to explain that the affidavit of the plaintiffs' attorney "engages in extensive argumentation and draws numerous conclusions of law. [The attorney] further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The … Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the … Affidavit in its entirety is granted." *Internet Law Library*, 2005 WL 3370542 at *3.

## IV.   ANALYSIS

Although an attorney's declaration or affidavit is a proper means for introducing the deposition testimony of witnesses and other relevant evidence supporting a motion, the O'Brien Declarations go much further.

The O'Brien Declarations intertwine the factual record with legal argument regarding the ordinary observer test and non-infringement of the Design Patents.  [*See* Dkt. No. 83 ¶¶ 7-20.] Mr. O'Brien sets forth no foundation or personal knowledge to establish his qualifications as an ordinary observer so as to permit him to testify as to the similarities and differences between Defendants' accused devices and the patents-in-suit.  Yet, in Paragraph 19 of one of his Declarations [Dkt. No. 83], Mr. O'Brien opines that the Court can rule as a matter of law that an ordinary observer would conclude that the Design Patents are "plainly dissimilar."  Further, in Paragraph 20 of the same Declaration, Mr. O'Brien further opines as follows:

> No ordinary observer would find the accused design to be more similar to the plaintiff's single facet, triangular-shaped gusset than the two-faced, wedge-shaped gussets found in the Orsolini pull plow. Similarly, no ordinary observer would find the accused design to be more similar to the plaintiff's designs incorporating single facet, triangular-shaped gussets than the two-faceted, wedge-shaped gussets found in the Tenco snowblower.

[Dkt. No. 83 ¶ 20.]

Testimony such that "no ordinary observer would find …" and "… [f]or this reason, the Tenco snowblower is pertinent prior art and should be considered" [Dkt. No. 83 ¶ 27] are improper legal conclusions under the circumstances and invade the province of the trier of fact.[6]

---

[6]As further examples, in Paragraph 35 of his Declaration in support of Defendants' partial summary judgment motion, Mr. O'Brien states that "[a]lternatively, the Daniels pull plow modified by Bonnell's *Push 'n Plow,* another brand of pushers know[n] to the inventors, also renders the design patents invalid for obviousness." [Dkt. No. 83.]  Similarly, in Paragraph 31 of the same Declaration, Mr. O'Brien testifies about the use of a *Tenco* device at an airport based

Although Mr. O'Brien's Declarations point to portions of the record that he asserts are favorable to Defendants' positions, Mr. O'Brien then extrapolates the record to draw ultimate conclusions of invalidity and non-infringement.

Further, in reaching his legal conclusions Mr. O'Brien relies in part on inadmissible evidence. For example, the O'Brien Declarations rely on the testimony and Report of Jerre Heyer to support Mr. O'Brien's conclusions as to non-infringement. [*See* Dkt. No. 83 ¶¶ 5, 11-16, 18-20, and 25.][7] However, as I have explained in my Report and Recommendation on Expert Opinions and Reports, although Mr. Heyer is believed to be competent to testify as to the experience and perspective of an ordinary observer and differences between the accused device and the claimed designs, his testimony on the ultimate issue of non-infringement is improper. Mr. Heyer's testimony on the ultimate issue of non-infringement has been recommended to be struck because, among other reasons, Mr. Heyer applied the wrong legal standard in reaching his ultimate conclusions of non-infringement. Similarly, the conclusions of invalidity contained in the same O'Brien Declaration rely on the testimony and Reports of Alan P. Douglas, Nicholas Godici, and William M. Leonard. [Dkt. No. 83 ¶¶ 29-39.] For reasons explained in my Report and Recommendation on Expert Opinions and Reports, I have recommended that Messrs. Douglas and Godici be precluded from testifying on issues of invalidity and inequitable conduct and limited to testifying on PTO practice and procedure. Mr. Leonard's testimony has likewise been recommended to be restricted because he is not qualified as an expert in the art of material

---

not on his personal knowledge, but on the uncorroborated statements of a third party. [*Id.*] These statements are hearsay, and are not within Mr. O'Brien's personal knowledge.

[7]In paragraph 25 of his Declaration in support of Defendants' motion for partial summary judgment, Mr. O'Brien states that "[f]or the reasons set forth in the Report of Jerre Heyer …, partial summary judgment should be granted with respect to all sizes of the angle pusher."

moving blades.  Mr. O'Brien's Declarations rely in large part on this evidence.  It is not permissible for Mr. O'Brien to introduce into evidence indirectly, through his Declarations, expert testimony that cannot be directly introduced into evidence.

The O'Brien Declarations also contain a review and analysis of the opinions of both Dr. Quensel and Mr. Dannible with respect to Defendants' *Daubert* motions to disqualify.  [*See* Dkt. No. 83 ¶¶ 40-57; Dkt. No. 93 ¶ 46.]  While a review of these expert opinions arguably might be permissible, Mr. O'Brien's Declarations go much further.  Mr. O'Brien is argumentative in his review of the Quensel and Dannible opinions, which is improper for an attorney declaration.  By way of example, Paragraph 44 of the O'Brien Declaration in support of Defendants' motion for partial summary judgment states "[i]t is readily apparent from reviewing Dr. Quesnel's opinion on infringement of the design patents that he focused exclusively on the gusset … and nothing else ...." [Dkt. No. 83 ¶ 44.]  Mr. O'Brien concludes that Dr. Quensel "does not qualify as an ordinary observer" because his experience is not comparable to Defendants' expert Mr. Heyer.  [Dkt. No. 83 ¶¶ 48-49.]  This is not the standard for disqualifying an expert.  The same O'Brien Declaration reaches similar conclusions regarding Mr. Dannible's analysis.  [Dkt. No. 83 ¶¶ 51-57.][8]  However, these conclusions are not properly made.  They amount to legal argument, unsupported assertions, and contain hearsay or expert opinion.  They simply are not facts within Mr. O'Brien's personal knowledge.

---

[8]For example, Mr. O'Brien's Declaration in support of Defendants' partial summary judgment motion asserts that "[b]ecause of Mr. Dannible's failure to consider the correct data, the conclusory nature of his opinions and his improper methodology, Mr. Dannible should be disqualified from testifying insofar as he purports to opine on the plaintiff's lost profits." [Dkt. No. 83 ¶ 56.]

8

In summary, the majority of the O'Brien Declarations is argumentative, contains hearsay and conjecture, or is otherwise improper. The Declarations also improperly reach legal conclusions based on Mr. O'Brien's weighing of the evidence, much of which is not admissible.

Given that at least parts of the O'Brien Declarations must be stricken, the next question is whether to strike the Declarations in part or in their entireties. Plaintiff does not complain about the admissibility of the evidence attached by way of the O'Brien Declarations. Rather, Plaintiff complains only with respect to the legal argument and opinions present in the O'Brien Declarations. Both parties cite *Monahan* v. *New York City Dep't of Corrections* and *Morris* v. *Northrop Grumman Corp.* [Dkt. No. 90, Pl's. Mov. Br., 6; Dkt. No. 83, Defs.' Opp'n, 5.] In *Morris,* the court held that "rather than scrutinizing each line of each of the plaintiffs numerous affidavits and discussing whether they contain conclusory allegations, legal arguments, or hearsay and whether such hearsay may be categorized as a hearsay exception, the Court in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible pursuant to the principles enunciated above - including the frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999). Based on this reasoning, the court denied the defendants' motion to strike. *Id.*

Based on the foregoing, it is my recommendation that the Court strike the O'Brien Declarations, except for the limited purpose of considering the evidentiary exhibits attached to the Declarations. *Perez v. Volvo Car Corp.,* 247 F.3d 303, 315 (1st Cir. 2001) (disregarding only portions of an affidavit that were inadmissible and retaining the remaining parts); *see also Upshaw v. FordMotor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (finding error in the district court's decision to strike an entire affidavit, rather than striking only the inadmissible portions). The

9

O'Brien Declarations complicate the issues by intertwining admissible evidence with inadmissible expert testimony and argumentative legal conclusions biased in favor of Defendants. The parties' respective summary judgment motions can be decided based on the evidence of record and the parties' briefs, which more than adequately direct the Court to portions of the record that support or rebut the parties' respective positions. It is my opinion that the Court can draw its own conclusions based on the presentation of evidence in the parties' briefs and does not need to rely on statements contained in Mr. O'Brien's Declarations as "aid" or otherwise.

                                              Respectfully submitted,

                                              Joseph W. Berenato, III
                                              Special Master

May 31, 2011