UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEGELMAN INDUSTRIES, LTD, | : | |
| Plaintiff, | : | Civil Action No. 06-CV-6346 |
| | : | |
| v. | : | |
| | : | |
| | : | **REPORT AND** |
| PRO-TECH WELDING AND | : | **RECOMMENDATION ON** |
| FABRICATION, INC. and | : | **SUPPLEMENTAL** |
| MICHAEL P. WEAGLEY, | : | **DECLARATION OF** |
| Defendants. | : | **DUANE C. BASCH** |
| | : | |

## I.    INTRODUCTION

Pursuant to the Court's Order of August 11, 2010 [Dkt. No. 118], the undersigned was appointed Special Master to, *inter alia*, issue a Report and Recommendation on the Motion [Dkt. No. 111] of the defendants Pro-Tech Welding & Fabrication, Inc. ("Pro-Tech") and Michael P. Weagley (collectively "Defendants") for permission to submit the Supplemental Declaration of Duane C. Basch, Esq. for consideration in conjunction with the pending summary judgment motions.

Having considered the parties' respective submissions and conducted oral argument on November 18, 2010, the following constitutes my Report and Recommendation regarding the issues presented in Defendants' Motion.

## II.    BACKGROUND

The plaintiff Degelman Industries, Ltd. ("Plaintiff") brought this action accusing Defendants of infringing Plaintiff's utility patent U.S. Patent No. 6,845,576 entitled "Materials Moving Blade" ("the '576 Patent") and design patents U.S. Patent Nos. D478,097 ("the D'097

1

Patent"), D519,128 ("the D'128 Patent"), and D519,129 ("the D'129 Patent"), each entitled "Snow Moving Apparatus" (collectively the "Design Patents"). Plaintiff moved for partial summary judgment on the ground that the Design Patents were infringed by snow pusher products manufactured and sold by Defendants.[1]

Defendants moved for partial summary judgment of non-infringement and invalidity. Defendants sought, *inter alia*, declaratory relief that the claims of the '576 Patent are invalid as being anticipated by the prior art under 35 U.S.C. § 102 and/or obvious over prior art under 35 U.S.C. § 103. Plaintiff opposed the Defendants' partial summary judgment motion as to invalidity by, among other things, challenging Defendants' prior art submissions as lacking sufficient corroboration to support invalidity by the clear and convincing standard. Defendants submitted an initial affidavit of Duane C. Basch, an attorney representing Defendants, in support of their reply brief. The initial affidavit is not the subject of Defendants' Motion.

Mr. Basch attached exhibits to his initial affidavit that allegedly supported Defendants' experts' opinions as to the prior art's teachings. The exhibits included Office Actions issued by the U.S. Patent & Trademark Office ("PTO") on December 26, 2006 and August 24, 2009 in connection with the prosecution of a related patent application U.S. Serial No. ("USSN") 10/990,591, which is a division of USSN 10/630,327, now the '576 Patent.[2] USSN 10/990,591 is

---

[1]During the oral argument, Plaintiff withdrew its summary judgment motion as to one of the accused products known as the ALB Angle Model. [Hr'g Tr. 4:17-5:5.]

[2]The PTO allowed the divisional application and consequently issued it as U.S. Patent No. 7,805,863 ("the '863 Patent") on October 5, 2010. The first page of the '863 Patent indicates that it is a divisional of USSN 10/630,327, now the '576 Patent, which is a continuation-in-part of USSN 29/171,447 filed November 21, 2002, now the D'097 Patent, and USSN 29/185,854, filed July 3, 2003, now the D'128 Patent.

hereinafter referred to as "the divisional application."[3]

On April 22, 2010, Defendants submitted a Supplemental Declaration of Mr. Basch [Dkt. No. 112] in support of their partial summary judgment motion.  It is this Basch Supplemental Declaration that is the subject of the Defendants' Motion.   The Supplemental Declaration attaches as Exhibit 1 a November 25, 2009 Information Disclosure Statement ("IDS") [Dkt. No. 112, Ex. 1, 8-14] that Plaintiff submitted to the PTO in connection with the prosecution of the divisional application.  The IDS listed, among other references, non-patent literature documents relating to a snow blower product known as the Tenco snowblower, which Defendants assert was in public use as early as 1999.  The non-patent literature documents included a Tenco Operator's Manual, an advertisement for a Tenco product, website screenshots and other documents produced by Defendants during the discovery process.  [Dkt. No. 112, Ex. 1.]  The IDS also included other references that had been identified by Defendants during the course of discovery in this action.  Several of these other references purportedly had been in Plaintiff's possession and control at least during the prosecution of the patents-in-suit.  [*Id*. at ¶ 8.]

Attached as Exhibit 2 to Mr. Basch's Supplemental Declaration was a "final" Office Action of March 12, 2010 [Dkt. No. 112, Ex. 2, 15-24] in which the PTO Examiner withdrew an earlier indication of allowance for several claims of the divisional application and rejected the claims as

---

[3] Mr. Basch's initial affidavit also recounts his involvement in the collection and submission of evidence that Defendants relied upon in their partial summary judgment motion to challenge the validity of the patents-in-suit.  In his initial affidavit, Mr. Basch recounts his involvement in the preparation of an affidavit of Robert Orsolini and describes how the Orsolini affidavit and other evidence corroborate public use under 35 U.S.C. § 102 of the "Orsolini/Daniels Plow," which Defendants has cited as invalidating prior art.  Mr. Basch's initial affidavit also recounts his discovery and investigation of the "Tenco Snowblower," which Defendants assert was also on sale and in public use under Section 102.

being anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, or both based on prior art cited in the November 25, 2009 IDS.

With respect to the Section 102 rejection, the PTO Examiner found that claims 49-51 of the divisional application were anticipated by photos of the Tenco snowblower, which the PTO Examiner described as "purchased [in] December 1999" and thus "on sale" under 35 U.S.C. § 102(b). [Dkt. No. 112, Ex. 2, 18.] With respect to the obviousness rejection, the PTO Examiner found that all of the claims of the divisional application were unpatentable over an earlier patent U.S. Patent No. 5,724,755 issued to defendant, Michael P. Weagley, in view of the Tenco snowblower. [*Id.* at 20.]

Defendants assert that their Motion to accept the Supplemental Declaration of Mr. Basch should be granted because it includes evidence that is highly relevant to issues of invalidity but was previously unavailable to the parties and the Court when Defendants' partial summary judgment motion was briefed. [Dkt. No. 113, 4.] According to the Defendants, the PTO Examiner rejected certain pending claims with reasoning that "parrots" the reasoning of two of Defendants' experts submitted in support of the pending summary judgment motion. [Dkt. No. 113, 3-4.] As such, Defendants assert that the PTO Examiner's reasoning provides a further basis to invalidate the patents-in-suit.

According to Plaintiff, Defendants have not demonstrated the requisite "good cause" as required under Federal Rule of Civil Procedure 16(b) to extend the Court's Scheduling Order to permit late submission of the Basch Declaration. [Dkt. No. 115, 2.] Plaintiff argues that for this and other reasons discussed below, the Supplemental Declaration is procedurally improper, untimely, inadmissible, and should be summarily dismissed. [Dkt. No. 115, 1.] Plaintiff also asserts that it is "well-settled law" that PTO Office Actions issued subsequent to an issued patent

are irrelevant and highly prejudicial. [*Id*.]

For the reasons set forth below, the Supplemental Declaration of Mr. Basch will be admitted only to the extent necessary to make the IDS and Office Action part of the record for consideration in deciding Defendants' partial summary judgment motion. The commentary and opinions of Mr. Basch in his Supplemental Declaration are recommended to be stricken.

### III.     ANALYSIS

Initially, I must address whether the late submission of the IDS and final Office Action after the time period allotted by the Scheduling Order is proper. Fed. R. Civ. P. 6(b)(1)(B) provides:

> (1)   *In General.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> ***
>
> (B)   on motion made after the time has expired if the party failed to act because of excusable neglect.

A finding of "excusable neglect" under Rule 6(b) requires a demonstration of good faith by the party seeking to extend the time and a reasonable basis for not complying with the deadline at issue. *See Allstate Ins. Co. v. Administratia Asigurarilor de Stat*, 163 F.R.D. 196, 198 (S.D.N.Y. 1995).

Here, Defendants could not have submitted the March 12, 2010 final Office Action [Dkt. No. 112, Ex. 2] by the January 7, 2010 deadline for submitting papers in connection with the dispositive motions, because the PTO did not issue the final Office Action until more than two months after that date had passed. Thus, Defendants have demonstrated that the deadline could

not have been met despite due diligence on their part.  *See Leviton Mfg. Co. v. Nicor, Inc.*, 245 F.R.D. 524, 529 (D.N.M. 2007).   Any arguable delay or neglect by Defendants in not learning of the Office Action at a sooner date is minor and excusable given that Defendants acted within a reasonable time in submitting the final Office Action to the Court under the circumstances.

"[A] district court has discretion to consider a late affidavit if it chooses to do so."  *Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993); *see also Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985) ("...it is within the discretion of the district courts whether to consider affidavits considered in an untimely fashion").  *Cf. In re Adler, Colman Clearing Corp.*, 497 F. Supp. 2d 520, 523 (S.D.N.Y. 2007) (rejecting affidavit on the substantive ground that it lacked reliability).   Here, Plaintiff cannot claim to be "blindsided" or otherwise prejudiced by this submission, because Plaintiff had been prosecuting the divisional application and was or should have been aware of the final Office Action.  *See CA, Inc. v. Simple.Com, Inc.*, 02 Civ. 2748, 2009 U.S. Dist LEXIS 25242 *30, 2009 WL 7445199 (E.D.N.Y. Mar. 5, 2009).

Next, I find that the IDS and the PTO's March 12, 2010 "final" Office Action are potentially relevant to Defendants' pending motion for partial summary judgment.  The PTO Examiner's rejections address claims of the divisional application, which has an identical specification to the '576 Patent.  Further, the divisional application is a continuation-in-part ("CIP") of the D'097 Patent and the D'128 Patent, and therefore is related to at least two of the Design Patents.  Where, as here, "multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation."  *TBC Consoles, Inc. v. Forecast Consoles, Inc.*, 665 F. Supp. 2d 266, 280 n.6 (S.D.N.Y. 2009) (quoting *Elkay Mfg. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)).   Indeed, some of the terms contained in the

claims of the divisional application rejected in the March 12, 2010 Office Action are identical to terms found in the claims of the '576 Patent. Such common terms include "main blade," "sidewalls," and "apex."

Plaintiff asserts that it is "well-settled law" that Office Actions issued subsequent to the issuance of a patent are irrelevant and highly prejudicial even in the context of a concurrent reexamination of the same patent having the same claims, citing *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 907 (N.D. Iowa 2009). However, *Transamerica Life* related to a pending reexamination where no office action had been issued. The *Transamerica Life* court recognized that the "grant by the examiner of a request for reexamination is not probative of unpatentability" and "does not establish a likelihood of patent invalidity." *Id.* at 905. The *Transamerica Life* court granted a motion *in limine* excluding evidence of the pending reexamination. *Id.* at 907-08.

I do not find *Transamerica Life* to be controlling for at least three reasons. First, the Federal Circuit's prosecution history estoppel cases recognize that "prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003); *see also Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) (stating that "[t]he prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit"); *Elkay Mfg.*, 192 F.3d at 980 (stating that "[w]hen multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation"). Second, in *Transamerica Life*, the reexamination proceeding had just began, and its outcome was uncertain. Here, in contrast, examination of the divisional

application has been completed. The divisional application issued as the '863 Patent on October 5, 2010. Third, an order for reexamination, such as at issue in *Transamerica Life*, only requires a finding by the PTO that a substantial new issue of patentability has been raised. The finding is not itself a rejection. Defendants' Motion, on the other hand, relates to a final Office Action rejecting claims of a divisional application that is related to the '576 Patent. The references relied upon by the PTO Examiner are some of the same references submitted in Defendants' partial summary judgment motion and, as pointed out above, the claims of the divisional application share common terms with the '576 Patent claims.

Regarding admissibility, Plaintiff argues that the Office Action does not satisfy Fed. R. Evid. 803(8)(c), the public records exception to hearsay, which requires finality for the admissibility of factual findings. Plaintiff cites *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101, 108 (E.D. Va. 2004), where an initial decision of a Federal Trade Commission (FTC) administrative law judge (ALJ), finding that patent owner had not engaged in unlawful anticompetitive conduct, was found to be inadmissible. Plaintiff also cites *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998), where memoranda prepared by staff members of National Highway Traffic Safety Administration (NHTSA) that expressed preliminary or interim opinions about research on safety of particular types of vehicles were found to be hearsay not within the hearsay exception for public records. In *Smith*, opinion memoranda did not set forth activities of agency and did not reflect factual findings. *Id.* at 862.

However, the Federal Circuit has repeatedly held that prosecution history of a related patent can be relevant if, as here, it addresses a limitation in common with one or more of the patents-in-suit. *See Advanced Cardiovascular*, 265 F.3d at 1305; *Elkay Mfg.*, 192 F.3d at 980. Office Actions such as the one submitted with Mr. Basch's Supplemental Declaration are exactly

the type of public records that the PTO routinely generates in its ordinary course of business for carrying out its normal activities.

Plaintiff correctly notes that the standard of patentability applied by the PTO is lower than the standard for invalidity, and that the Office Action is not a "final agency decision." [Dkt. No. 115, 4-6.] According to Plaintiff, the burden before the PTO is simply to set forth a prima facie case of obviousness. *In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1993). In contrast, the burden in court to invalidate a patent is one of clear and convincing evidence. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986). Further, PTO Examiners are required to apply the "broadest reasonable meaning" approach to claim construction in deciding the patentability of a claim. *In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997). In contrast, courts must construe claims pursuant to strict guidelines. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

However, the cases cited by Plaintiff in support of its position relate to potential jury confusion. *See Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 765 (8th Cir. 2005) (affirming exclusion under Rule 403 of PTO's "tentative opinion" that "had the potential to unfairly prejudice the defendants if the jury mistakenly viewed it as an official government position on the critical...issue that the jury had to decide"); *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 769 (5th Cir. 1980) (affirming exclusion from jury of "written findings entered by the patent examiner" which "included the examiner's opinion on the ultimate issue of validity"). Here, Defendants' Motion relates to admissibility of the Supplemental Declaration of Basch for the limited purpose of deciding the pending partial summary judgment motion by the Court. Thus, Plaintiff's arguments regarding potential jury confusion are irrelevant to Defendants' Motion. This Court is competent to evaluate the relevance and import of the Office Action and can do so

without confusion.

Plaintiff complains that Defendants failed to meet and confer or otherwise notify Plaintiff's counsel of its intention to request an extension of time to the Court's Scheduling Order as required by the Local Rules of the Western District of New York. Defendants respond that "[i]t could be argued that the burden was on Plaintiff to bring the Office Action to the Court's attention." [Dkt. No. 116, 8 n.2.] Irrespective of whose burden it was to bring the Office Action to the attention of the Court, I find that no prejudice has resulted from Defendants' purported oversight of the Local Rules.

While the IDS and final Office Action are admissible, the Basch Supplemental Declaration is not, at least not in its entirety. According to Defendants, the Basch Supplemental Declaration is necessary to corroborate expert opinions advanced by Defendants in their earlier briefing of their partial summary judgment motion. [Dkt. No. 113, 5.] However, the Basch Supplemental Declaration goes beyond merely introducing the IDS and Office Action into evidence for corroborative purposes. Mr. Basch sets forth his legal analysis as to the importance of the Office Action and its impact on the issue of invalidity, stating as follows:

> The relevance of the USPTO Office action to the pending *motions cannot be seriously questioned*; the examiner's rejection deals with claims directed to an apparatus that is identical to the one Degelman discloses in the parent ('576 patent), and for which portions are disclosed, and therefore claimed, in the design patents-in-suit. *It is respectfully submitted that the same grounds upon which examiner Beach rejected the remaining eight claims of the Pending Application further serve as a basis to invalidate the patents-in-suit*.

[Dkt. No. 112, 5, ¶ 14 (emphasis added).]

An attorney declaration or affidavit is generally used to provide the courts with documents and other evidence, for purposes of establishing a record, and should not be used as a "vehicle to lobby the court." *Internet Law Library, Inc. v. Southridge Capital Mgmt., L.L.C.*, No. 01 Civ.

6600 (RLC), 2005 U.S. Dist. LEXIS 32299 *9, 2005 WL 3370542 *3 (S.D.N.Y. Dec. 12, 2005) (granting motion to strike attorney affidavit because "[a]n attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court") (citing *Universal Film Exchs., Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4, 5, (S.D.N.Y. 1965)).[4] Thus, if a declaration improperly includes legal arguments, it may be stricken at the court's discretion. *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (upholding decision to strike affidavit which "more resembled an adversarial memorandum than a *bona fide* affidavit").

The Basch Supplemental Declaration, in Mr. Basch's own words, presents testimony regarding the "Importance of this Supplemental Declaration" [Dkt. No. 112, 5], the "unavoidable … correctness" of Defendants' experts [*id.* at 7, ¶ 18], that the PTO Examiner's position "is exactly the position taken by the defendants' experts, William M. Leonard and Alan P, Douglas, in their respective reports/affidavits" [*id.* at 5, ¶ 15], and the ultimate conclusion that the references that the PTO Examiner used to reject claims of the divisional patent as unpatentable "serve as a basis to invalidate the [claims of the] patents-in-suit" [*id.* at 5, ¶ 14]. These statements are argumentative, conclusory, and based on the opinion of Mr. Basch.

Additionally, in his Supplemental Declaration Mr. Basch draws conclusions of invalidity based on an assumption that the Tenco snowblower non-patent literature documents are prior art under 35 U.S.C. §§ 102 and 103. As explained in my Report and Recommendation on

---

[4]The court went on to explain that the affidavit of the plaintiffs' attorney "engages in extensive argumentation and draws numerous conclusions of law. [The attorney] further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The … Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the … Affidavit in its entirety is granted." *Internet Law Library,* 2005 WL 3370542 at *3.

Defendants' motion for partial summary judgment, Defendants have failed to establish by clear and convincing evidence that the Tenco snowblower is indeed prior art. Plaintiff's listing of the non-patent literature documents on the IDS is not an admission that the documents are prior art.

> Mere listing of a reference in an information disclosure statement is not taken as an admission that the reference is prior art against the claims. *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354-55, 66 USPQ2d 1331, 1337-38 (Fed. Cir. 2003) (listing of applicant's own prior patent in an IDS does not make it available as prior art absent a statutory basis); *see also* 37 CFR 1.97(h) ("The filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b).").

Manual of Patent Examining Procedure, § 2129.

Further, Plaintiff's amendment of the claims of its divisional application also is not an admission that the Tenco snowblower is prior art.

> It is recognized that positions are often taken during patent prosecution out of convenience and expedience, and, therefore, such positions should not be given conclusive effect. *See Quad Envtl. Techs. v. Union Sanitary Dist.*, 946 F.2d 870, 873-74 (Fed. Cir. 1991). It may often be the case that it is more expedient to distinguish a cited reference than to argue that it is not prior art. Accordingly, the fact that an applicant for a patent, in responding to an Office Action, elects to distinguish a cited reference on the merits does not constitute an admission that the document qualifies as prior art for this case.

*Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 578 (S.D.N.Y. 2002).[5]

Given that at least parts of the Supplemental Declaration must be stricken, the next question is whether to strike the Supplemental Declaration in part or in its entirety. In *Morris* v. *Northrop Grumman Corp,* 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999), the court held that "rather than scrutinizing each line of each of the plaintiffs [*sic*] numerous affidavits and discussing

---

[5]*Astra Aktiebolag* involved the prior art effect given to arguments made in connection proceedings in the European Patent Office, not the PTO. Nonetheless, I find its dicta to be directly on point and this factual distinction to be inapposite.

whether they contain conclusory allegations, legal arguments, or hearsay and whether such hearsay may be categorized as a hearsay exception, the Court in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible pursuant to the principles enunciated above - including the frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1." *Morris,* 37 F. Supp. 2d at 569. Based on this reasoning, the court denied the defendants' motion to strike. *Id.*

Based on the foregoing, it is my recommendation that the Court strike the Supplemental Declaration of Basch, except for the limited purposes of admitting and considering the evidentiary exhibits attached to the Supplemental Declaration. *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001) (disregarding only portions of an affidavit that were inadmissible and retaining the remaining parts); *see also Upshaw* v. *FordMotor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (finding error in the district court's decision to strike an entire affidavit, rather than striking only the inadmissible portions).

I recognize that there may seem to be some inconsistency between my Report and Recommendation on Defendants' Motion for Partial Summary Judgment, in which the Tenco materials were not admitted, and this Report and Recommendation. That motion was decided based upon the evidence that was submitted. Different claims were also under consideration in that motion and examined in the divisional application. Plaintiff has not unequivocally admitted that the Tenco snowblower is prior art, and has at most submitted the information as noted above. The clear and convincing evidence standard applies to invalidity of patent claims. On summary judgment, all inferences are to be drawn in favor of the non-movant. Here, even though the Basch Supplemental Declaration is recommended as being admitted, the conclusion as set forth in the Report and Recommendation on Defendants' Motion for Partial Summary Judgment is deemed

appropriate.

                                                 Respectfully submitted,

                                                 Joseph W. Berenato, III
                                                 Special Master

May 31, 2011