UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEGELMAN INDUSTRIES LTD.,

                      Plaintiff,

                                                    06-CV-6346T
                                                    **DECISION**
                      v.                            **and ORDER**

PRO-TECH WELDING AND FABRICATION, INC.,
and MICHAEL P. WEAGLEY,

                      Defendants.
_____


## INTRODUCTION

     Plaintiff Degelman Industries Ltd., ("Degelman") brings this
action pursuant to federal patent law, (codified at 35 U.S.C. § 100
et. seq.), claiming that defendants Pro-tech Welding and
Fabrication, Inc., ("Pro-Tech") and Michael P. Weagley are
infringing upon Degelman's United States Patent no. 6,845,576
(issued on January 25, 2005)(hereinafter "the '576 Patent"), as
well as United States Design Patent nos. 478,097 (the '097 Patent),
519,128 (the '128 Patent), and 519,129 (the '129
Patent)(collectively "the design patents").  The '576 Patent,
entitled "Materials Moving Blade," generally discloses a pushing
blade that is attached to heavy equipment vehicles (such as a
bulldozer), for the purpose of moving earth, debris or snow.  The
blade is fitted with sidewalls that extend forward from each end of
the blade, which sidewalls prevent the material being moved from
escaping past either end of the blade.  The purported novelty of

the blade disclosed in the '576 Patent is that, <u>inter alia</u>, it is fitted with a unique strengthening gusset that is designed to strengthen the connection between the blade and the sidewalls, and is also designed to prevent snow or other material from getting caught or stuck under the gusset.  The design patents, each of which is entitled "Snow Moving Apparatus" disclose specific ornamental designs for a snow moving apparatus.

The parties have filed several motions, including: plaintiff's motion for partial summary judgment (docket item no. 77); plaintiff's motion to preclude expert testimony and reports (docket item no. 78) defendants' motion for partial summary judgment, and to exclude expert testimony (docket item no. 80); plaintiff's motion to strike (docket item no. 86); defendants' motion to preclude expert testimony (docket item no. 87); plaintiff's second motion to strike (docket item no. 97); and defendants' motion to supplement the record (docket item no. 111).  Because of the complexity of the issues raised in the parties' motions, by Order dated August 11, 2010, I appointed Special Master Joseph W. Berenato, III, to hear and consider the parties' motions, and to issue a Report and Recommendation to the Court as to how each motion should be decided.  I further Ordered that the parties would be given additional time to file objections to the Special Master's Reports and Recommendations, and that the findings of the Special Master would be reviewed <u>de novo</u> by this Court.

2

## THE SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS

Special Master Berenato conducted a hearing on the parties' motions, and thereafter issued several Reports and Recommendations recommending how the parties' motions should be decided. In his first Report and Recommendation (docket item no. 131) the Special Master recommended that Defendants' motion for partial summary judgment (docket item no.80) be granted in-part and denied in-part. In his second Report and Recommendation (docket item no. 132), the Special Master recommended that plaintiff's motion for partial summary judgment (docket item no. 77) be denied.  In the third Report and Recommendation (docket item no. 133), Special Master Berenato recommended that: plaintiff's motion to preclude expert testimony and reports (docket item no. 78) be granted in-part and denied in-part, and that defendants' motion to exclude expert testimony and reports (docket item nos. 80 and 87) be granted in-part and denied in-part.  In his fourth Report and Recommendation (docket item no. 134), the Special Master recommended that plaintiff's motions to strike the Declarations of Donald W. O'Brien (docket item nos. 86 and 97) be granted.  In the fifth Report and Recommendation issued by Special Master Berenato (docket item no. 135) the Special Master recommended that defendants' motion to supplement the record with the Declaration of Duane C. Basch ("Basch") (docket item no. 111) be granted.  In the sixth Report and Recommendation, (docket item no. 137) Special Master Berenato

recommended that plaintiff's motion to strike the Affidavit of Leslie Craig ("Craig") (docket item no. 97) be granted.  Finally, in his Seventh Report and Recommendation (docket item no. 138), the Special Master recommended that plaintiff's motion to strike the Affidavit of Michael P. Weagley ("Weagley") (docket item no. 86) be denied.

## THE PARTIES' OBJECTIONS

### I.   Plaintiff's Objections

The parties object to certain of the recommendations made by Special Master Berenato.  Plaintiff objects to the Special Master's Recommendation that its motion for summary judgment on the issue of infringement of the '128 design patent be denied.  According to the plaintiff, it set forth a prima facie case of infringement of that patent, and the defendant failed to produce any evidence to rebut plaintiff's showing of infringement by defendants' products. Plaintiff also objects to the Special Master's recommendation that it's expert David J. Quesnel ("Quesnel") not be allowed to testify as to infringement of the plaintiff's patents by the defendants' products.   Degelman  claims  that  it  established  Quesnel's credentials  and  authority  to  provide  expert  testimony  on  the infringement of the plaintiff's patents, and therefore the Special Master erred in recommending that he be precluded from testifying. Finally, the plaintiff contends that the Special Master should have recommended that its motion to preclude the testimony of Jerre

Heyer ("Heyer") be granted in its entirety, and that Special Master Berenato erred in recommending that Heyer be allowed to testify as an "ordinary observer."

II.   Defendants' Objections

Defendants object to several aspects of the Special Master's Reports and Recommendations.  Initially, the defendants contend that the Special Master erred in recommending that its motion for summary judgment on the issue of non-infringement of the design patents be granted in-part and denied in-part.  While defendants assert that the Special Master properly recommended that the defendants established non-infringement of the '097 and '129 patents by certain of its products, the defendants contend that Special Master Berenato should have concluded that none of the allegedly infringing products infringed any of the design patents.

Defendants further argue that the Special Master should have recommended that the '576 Patent be found invalid on the issues of anticipation and/or obviousness.  According to the defendants, they sufficiently established that the invention disclosed in the '576 Patent is anticipated by a pull plow and a snow blower, and is rendered obvious by previously existing products and previously issued patents.

Defendants next object to the Special Master's recommendation that its motion seeking a declaration that the design patents are invalid as obvious be denied.  According to the defendants, they

established by clear and convincing evidence that the design patents are obvious in light of prior-art snow removal apparatuses.

Defendants also object to Special Master Berenato's recommendation that the testimony of their expert Nicholas P. Godici ("Godici") be limited to testimony regarding practices and procedures before the Patent and Trademark Office("PTO"). Defendants contend that Godici is qualified to testify on several other issues, including whether or not the plaintiff engaged in inequitable conduct, and whether or not the patents in-suit are valid.

Similarly, defendants object to Special Master Berenato's recommendation that the testimony of Alan P. Douglas ("Douglas") be restricted to testimony regarding PTO practices and procedures. Defendants assert that Douglas is qualified to testify on the additional issues of validity and inequitable conduct.

Defendant objects to Special Master Berenato's recommendation that the testimony of its proposed expert William Leonard ("Leonard") be limited to testimony regarding the design and fabrication of reinforcing members for reinforcing welded joints. According to the defendants, Leonard is qualified to, and should be allowed to, testify on issues of patent validity, and specifically obviousness. Finally, defendants contend that the Special Master should have recommended that the proposed expert testimony of Anthony Dannible ("Dannible") on the issue of damages be precluded

because of alleged flaws in Dannible's methodology in reaching his conclusions.  Special Master Berenato recommended that Dannible's testimony be allowed because he is a qualified expert on the issue of damages, and because his conclusions, and the rationale for reaching his conclusions, go to the weight of his testimony, not its admissibility.

For the reasons set forth below, I deny the parties' objections to the Special Master's Reports and Recommendations, and adopt the Report and Recommendations in their entirety, without modification.

## **DISCUSSION**

I.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations.  After such filing,

> [a] judge of the court shall make a de novo
> determination of those portions of the report
> or   specified   proposed   finding   or
> recommendations to which objection is made.  A
> judge of the court may accept, reject, or
> modify, in whole or in part, the findings or
> recommendations made by the magistrate.

In the instant case, however, upon appointing the Special Master, I Ordered that "[a]ll aspects of the Special Master's Report and Recommendation(s), shall be reviewed de novo by the court."  See

August 11, 2010 Order appointing Special Master at p. 1. Accordingly, I review all aspects of the Special Master's seven Reports and Recommendations, including those portions to which no specific objection was filed, <u>de novo.</u>

    II.  <u>Motions to Strike</u>

    A. <u>Declarations of Donald W. O'Brien</u>

    Plaintiff has moved to strike the declarations of Donald W. O'Brien ("O'Brien") that were submitted in support of and in opposition to the parties' competing motions for summary judgment on grounds that O'Brien, as attorney for the defendants, lacks personal knowledge of the events and or facts that are the subject of his declaration, and therefore may not, under Rule 56(c) of the Federal Rules of Civil Procedure be considered by the Court.

    Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Despite the requirement that a declaration be made upon personal knowledge, attorneys often submit declarations in support of or in opposition to a motion for summary judgment for the purpose of introducing documents into the record. <u>S.E.C. v. Competitive Technologies, Inc.</u>, 2006 WL 3346210, *1, (D. Conn., Nov. 6, 2006)("attorney affidavits are acceptable when . . . a

party uses them only as a vehicle through which to present admissible evidence relevant to the matter at hand") Although such declarations often do not rest entirely on personal knowledge, and it is expected that some advocacy will appear in an attorney declaration, (See e.g. Gasser v. Infanti Intern., Inc., 2008 WL 2876531, *7 (E.D.N.Y., July 23, 2008)(noting that "some degree of characterization" of evidence is to be expected in an attorney affidavit)courts will strike attorney affidavits or declarations where the documents are rife with argument, seek to introduce inadmissible evidence, or contain unsubstantiated factual averments. Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2nd Cir., 1999) (affirming district court's decision striking attorney affidavit where the affidavit was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge," and "more resemble[d] an adversarial memorandum than a bona fide affidavit.")

In the instant case, Special Master Berenato recommended that plaintiff's motion to strike the declarations of O'Brien be granted with respect to the actual averments made by O'Brien, but that the exhibits attached thereto be admitted to the record. After reviewing the Declarations de novo, I affirm and adopt this recommendation. I find that the O'Brien Declarations contain impermissible legal argument, excessive commentary on the evidence,

and in many instances, averments are based on inadmissible expert testimony. The documentary evidence that O'Brien introduces in his declarations, however, may stand on their own merits, and should not be stricken merely because the accompanying declaration is not permissible under Rule 56(c). Accordingly, and for the reasons stated by the Special Master in his Report and Recommendation (docket item no. 134), I grant plaintiff's motion to strike the O'Brien Declarations (docket item nos. 83, 91, and 92) with the exception that the documents attached thereto may be admitted.

    B.   <u>Declaration of Leslie Craig</u>.

Plaintiff moves to strike the affidavit of Leslie Craig, a proposed expert witness identified by the defendants. Defendants, in opposition to plaintiff's motion for partial summary judgment, submitted an affidavit from Craig to establish facts regarding purported prior art that according to the defendants, renders plaintiff's patents invalid. Plaintiff moves to strike the affidavit on grounds that Craig was never disclosed as a potential witness in defendants' initial or supplemental discovery disclosures.

Special Master Berenato recommended that the Craig affidavit be stricken on grounds that the defendants failed to timely disclose Craig's identity or that he would be providing expert testimony. The Special Master found no good cause for defendants'

failure to timely identify Craig, and further found that plaintiff would be prejudiced if Craig's affidavit were allowed to stand.

Considering the Craig affidavit, and the parties' arguments for an against allowing the affidavit de novo, I find that defendants have failed to establish good cause for failing to identify Craig in a timely manner, and that the plaintiff would be prejudiced if the court were to allow the affidavit to be considered.  With respect to prejudice, I find that the lack of disclosure of Craig as a potential expert witness prejudiced plaintiff, as plaintiff did not have the opportunity to depose or examine Craig.  I further find, for the reasons stated by the Special Master, that the mention of Craig's name during a deposition did not suffice to put plaintiff on notice that Craig could be called to provide expert testimony on any subject.

With respect to defendants' contention that they did not disclose Craig as an expert because they did not anticipate the arguments plaintiff would raise in opposition to defendants' motion for summary judgment, such a reason does not establish good cause for failing to timely disclose Craig as an expert witness.

C.   Declaration of Michael Weagley

Plaintiff moves to strike the affidavit of defendant Michael Weagley submitted in support of defendants' motion for partial summary judgment on grounds that the affidavit contains inadmissible evidence, including hearsay, opinions, and

11

speculation.   Special Master Berenato recommended that plaintiff's motion be denied on grounds that Weagley's averments were made on personal knowledge, and set forth his own beliefs and recollections of events.   That the statements made by Weagley may exhibit some bias, as would be expected by the statements of a named defendant, questions regarding credibility of Weagley's statements Goes to the weight, and not the admissibility, of his statements.   Accordingly, I adopt the Special Master's recommendation that plaintiff's motion to strike Weagley's affidavit be denied.

III. <u>Motion to Supplement</u>

Defendants move to supplement the record with the affidavit of Duane C. Basch, (docket item no. 112) an attorney, for the purpose of introducing evidence of prior art, that according to the defendants, demonstrates that the asserted patents are invalid in light of prior art.   Plaintiff objects to defendants' motion on grounds that the affidavit is untimely under the court's scheduling order.   Special Master Berenato found that the defendants demonstrated good cause for any dely in filing the affidavit, and Recommended that the defendants' motion to supplement be granted in part and denied in part.   Specifically, Special Master Berenato recommended that the affidavit be admitted for the purpose of entering the attached documents into the record, but denied with respect to Basch's averments, which the Special Master considered to be argument and impermissible commentary on the evidence.

12

Having reviewed the record de novo, I find that the defendants, for the reasons stated by Special Master Berenato in his Report and Recommendation demonstrated good cause for the late filing of the Craig Supplemental Affidavit, and therefore defendants' motion to supplement is granted to the extent that the exhibits attached to the affidavit may be admitted.  I deny defendants' motion to supplement with respect to the actual averments made by Craig in his Supplemental Affidavit, which largely constitute impermissible argument.

IV.   Plaintiff's Motion to Preclude Testimony and Reports of Nicholas P. Godici and Alan P. Douglas

Plaintiff moves to preclude testimony and reports of defendants' experts Nicholas P. Godici and Alan P. Douglas on grounds that Godici and Douglas, who were proffered by the defendants as experts on PTO practice and Procedures, as well as inequitable conduct, and patent validity, lack the requisite expertise to qualify as experts with respect to issues of validity and inequitable conduct.  Special Master Berenato Recommended in his Report and Recommendation (docket item no. 133) that Godici and Douglas be limited to testifying as to PTO practice and procedure, but that they be precluded from testifying on issues of inequitable conduct before the PTO, and patent validity.  In support of this recommendation, Special Master Berenato concluded that, inter alia, neither Godici nor Douglas were qualified to testify as experts on the issue of validity, and more specifically obviousness, of the

13

asserted patents because neither had reviewed this Court's claim construction (and thus were unaware of the construction of the '576 Patent), and neither proposed expert has expertise in the relevant field of art.  With respect to proposed testimony on the issue of inequitable conduct, the Special Master noted that neither Godici or Douglas are attorneys, and neither claimed to have advanced understanding or knowledge of the legal standard for establishing inequitable conduct.  Accordingly, the Special Master determined that they were not qualified as experts to testify on the issue of whether or not the plaintiff engaged in inequitable conduct before the PTO.

Defendants object to the Special Master's recommendation on grounds that the Special Master imposed an improperly high standard for allowing expert testimony.  Specifically, defendants claim that the Special Master erred in suggesting that an expert is prohibited from testifying on the ultimate issue in a case.  Defendants further contend that the Special Master erroneously determined that an expert could only testify based on his first-hand knowledge of a subject.  The defendants argue that because Godici and Douglas have extensive experience as patent examiners, and collectively have reviewed thousands of patent applications, the proposed experts are qualified to testify not only on the issues of PTO practice and procedures, but may offer valuable and necessary

insight into the issues of inequitable conduct and obviousness of the asserted patents in light of prior art.

I find, however, that because the proposed experts lack experience in the field of the relevant art, they may not testify on the issue of validity.  While Godici and Douglas clearly have a wealth of experience as patent examiners, as stated by Federal Circuit Court of Appeals, "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art."  Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1363 (Fed. Cir., 2008).  In the instant case, the record reveals that neither Godici or Douglas have experience in the art of material moving blades or snow moving apparatus, the subjects of the patents in suit, and therefore, it is clear that neither can be considered experts qualified to render an opinion on whether or not prior art renders any of the asserted patents invalid.  Similarly, neither Godici nor Douglas have expertise on the issue of what constitutes inequitable conduct for purposes of rendering an issued patent invalid.  Although both proposed experts have considerable experience regarding practice before the PTO, neither Godici nor Douglas are attorneys, and neither have specialized experience or knowledge with respect to the legal standards that govern inequitable conduct analysis under federal law in federal court.

Accordingly, I find that Godici and Douglas are not qualified to testify as experts on the issue of inequitable conduct.

For the reasons stated above and in the Special Master's Report and Recommendation, I grant in-part and deny in-part plaintiff's motion to preclude the testimony of Godici and Douglas. Godici and Douglas may testify with respect to practice and procedure before the PTO, but are precluded from testifying with respect to obviousness or other aspects of the validity of the patents in suit, and may not testify on the issue of whether or not the plaintiff engaged in inequitable conduct before the PTO.

V.   Defendants' Motion to Preclude Testimony and Reports of David J. Quesnel

Defendants move to preclude the testimony of plaintiff's proposed expert David Quesnel with respect to testimony regarding infringement of the design patents on grounds that Quesnel does not qualify as an "ordinary observer" competent to render an opinion on the similarities between accused products and the asserted design patents. According to the defendants, Quesnel is not qualified as an "ordinary observer" because he is not a consumer in the market of materials moving blades or snow removal apparatus, and has not established familiarity with such items.

Special Berenato recommended that Quesnel be precluded from testifying on the issue of infringement of the design patents on grounds that Quesnel did not qualify as an "ordinary observer," failed to make an adequate examination of the accused products, and

16

failed to adequately compare the asserted design patents to the accused products. Plaintiff objects to the Special Master's findings on grounds that the defendants' motion to preclude Quesnel was not timely; the Special Master considered arguments not made by the defendants in recommending that Quesnel's testimony be precluded; and that the Special Master erred in finding that Quesnel was not qualified as an ordinary observer competent to provide his opinion on whether or not the accused products are so similar to the design patents as to infringe on those patents.

Upon reviewing the record de novo, I find that the Special Master correctly determined that Quesnel does not qualify as an ordinary observer, and therefore may not offer testimony as to whether the defendants' products accuse the asserted design patents. Initially, Special Master Berenato identified the proper legal standard for defining an ordinary observer. An "ordinary observer" is "a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent." Arminak and Associates, Inc. V. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1323 (Fed. Cir., 2007). Based on that definition, the Special Master properly determined that Quesnel in no way qualifies as an ordinary observer of

materials moving blades or snow moving apparatus.  The evidence reveals that Quesnel is not a purchaser or user of such equipment, and has never made any particular study of such equipment out of an interest in the equipment.  That he has seen snow removing equipment in use does not render him an ordinary observer of such equipment capable of rendering an opinion on the relative similarities of such products to the design patents at issue. Because Quesnel lacks the qualifications of an ordinary observer of the products and designs at issue, I grant defendants' motion to preclude his testimony with respect to infringement of the design patents by defendants' accused products.

Plaintiff contends that defendants' cross-motion to preclude Quesnel's testimony was untimely, and therefor must be denied.  I find, however, that any delay in filing the cross-motion is excusable, and did not result in prejudice to the plaintiff. Defendant filed a timely motion to preclude the testimony and report of Quesnel with respect to the issues of infringement of the design patents.  One month later, and after the deadline for filing motions to preclude, defendants filed a cross-motion  again seeking to preclude Quesnel from testifying or offering expert reports on the issue of infringement, but also seeking to preclude Quesnel's testimony on the issue of validity.  I find that plaintiff was not prejudiced by this delay, as it was on notice as of the deadline for filing motions to preclude that defendants objected to

Quesnel's testimony, and was on notice of the defendants' reasons for objecting to Quesnel's reports and testimony.  The arguments underlying both motions were legally and factually similar, and therefore plaintiff was not prejudiced by having to respond to both motions.

VI.   Plaintiff's Motion to Preclude Testimony and Reports of <u>Jerre Heyer</u>

Plaintiff moves to preclude the reports and testimony of defendants' expert witness Jerre Heyer on grounds that his testimony is biased, based on incorrect legal standards, and attempts to opine on ultimate issues reserved for the trier of fact.  Heyer is proffered as an expert witness by the defendants to testify as an ordinary observer as to similarities, or lack thereof, between the accused products and the plaintiff's patents.

Special Master Berenato recommended that Heyer's testimony be precluded with respect to his opinion on the ultimate issue of infringement, but that he be allowed to testify as an ordinary observer with respect to the alleged dissimilarities between the defendants' products and the plaintiff's patents.  In support of his recommendation, the Special Master noted that Heyer has 30 years of experience with snow plows, and is in the business of selling and servicing plows such as the ones at issue in this case. He is a longstanding member of the Snow and Ice Management Association, and has served as a presenter at Association meetings.

Plaintiff objects that its motion to preclude Heyer's testimony should have been granted in its entirety, on grounds that Heyer's testimony regarding the dissimilarities between the accused products and the asserted patents is based on an element-by-element analysis of the products and patents, and as such, is not based on the correct standard for determining infringement of design patents. According to the plaintiff, the standard for determining infringement of a design patent is whether or not patented design, when considered as a whole, is infringed by the accused product. See Egyptian Goddess v. Swisa, Inc., 543 F.3d 665, 677. Plaintiff contends that analysis such as Heyer's, which it considers to be based only on discrete elements of the design, and not the design as a whole, fails to elucidate the issue of infringement of the design patents, and therefore his testimony should be stricken in its entirety.

I find, however, that Heyer's testimony as an ordinary observer will benefit the trier of fact in this case. The court will instruct the Jury on the proper standard, or, if the case is tried before the bench, the court will be aware of the proper standard for determining infringement of design patents. Heyer's testimony based on his experience as an ordinary observer is simply part of a larger body of evidence that the trier of fact will need to consider in determining whether or not the accused products infringe the design patents.

Heyer may, not, however, testify on the ultimate issue of infringement, as Heyer lacks any specialized legal knowledge or training to opine as an expert as to whether or not the asserted patents are infringed.  Accordingly, I grant in part and deny in-part plaintiff's motion to preclude Heyer's testimony.

VII. Plaintiff's Motion to Preclude Testimony and Reports of William M. Leonard

Plaintiff moves to preclude the testimony and report of defendants' expert William Leonard on grounds that Leonard lacks skill in the relevant fields of art of materials moving blades, snow removal apparatus, mechanical design, and fabrication of mechanical parts, and therefore may not testify as an expert on the issues of infringement and invalidity of the asserted patents. Defendants' further contend that the methodology used by Leonard in developing his opinions on validity is unproven, unsound, and unreliable such that it may not be allowed under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Special Master Berenato recommended that Leonard be precluded from testifying as an expert or ordinary observer with respect to patent validity, on grounds that he lacked sufficient expertise or knowledge of material movers or snow moving equipment.  The Special master did, however, recommend that Leonard be allowed to testify as an expert on the issue of design and fabrication of reinforcing members for reinforcing welded joints.

Defendants object to the Special Master's recommendation on grounds that the Special Master has applied an overly restrictive standard for allowing expert testimony. According to the defendants, Leonard posses the requisite knowledge and experience to allow him to testify as an expert and ordinary observer on the issues of snow moving apparatus design, materials moving blades. Specifically, defendants note that Leonard has consulted as a technical expert in cases involving snowplows, and has personal experience operating his own snow plows used with a tractor and pickup truck.

I find, however, that Leonard lacks sufficient knowledge and experience to testify as an expert or ordinary observer with respect to snow moving apparatus and materials moving blades. I further find that the methodology he employed to arrive at his conclusion that the '576 patent is obvious in light of then-existing technology is flawed and untested such that it does not meet the <u>Daubert</u> standard for allowing expert testimony.

The uncontroverted evidence in the record reveals that the bulk of Leonard's technical experience comes from his several years as an employee of Eastman Kodak Company, where he worked in the field of camera manufacturing and product ideation. Much of his work was devoted to developing prototypes of camera parts, and Leonard was a named inventor in patents issued to Kodak. Following his tenure at Kodak, Leonard worked on his own as a consultant assisting parties with the design and development of camera or

electronic parts.  While Leonard's experience is significant, it is unrelated to the areas of snow removal apparatuses or material-moving blades.  Accordingly I find that he lacks the qualifications necessary to serve as an expert or ordinary observer with respect to the field of art pertaining to material-moving blades or snow removal apparatus.

I further find that the "product ideation process" which Leonard employed to conclude that the invention disclosed in the '576 Patent would have been obvious to a person skilled in the relevant art, is untested and not demonstrated to be reliable, and therefore under the standards set forth in Daubert, can not serve as the basis for his expert testimony on obviousness.  The standard for determining whether or not expert scientific testimony may be admitted at trial is set forth in Daubert where the Supreme Court, in analyzing Rule 702 of the Federal Rules of Evidence, determined that expert testimony which "rests on a reliable foundation and is relevant," is admissible under the Federal Rules.  Daubert, 509 U.S. at 597.  To determine whether or not expert testimony rests on a reliable foundation, a district court must "make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning can be applied to the facts in issue." Daubert, 509 U.S. at 592-93.  In assessing whether or not the testimony is scientifically valid, District Courts should examine certain factors such as: (1) whether or not the methodology or theory can be (or has been) tested;

(2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for the methodology, and (4) whether or not the theory or methodology is generally accepted in the relevant scientific community.  Daubert, 509 U.S. at 593.

In the instant case, there is no evidence suggesting that the "product ideation process" employed by Leonard can be been tested, has been subjected to pear review, is generally accepted, or has a known or potential rate of error.  In short, because the "product ideation process" can not be tested, duplicated, or confirmed, I find that it can not serve as a basis for Leonard's conclusion that the invention disclosed in the '576 patent is obvious in light of existing art and technology.  I therefor grant plaintiff's motion to preclude Leonard's testimony as it relates to materials moving blades and snow removal apparatus.  Leonard may, however, testify as an expert on the issue of design and fabrication of reinforcing members for reinforcing welded joints.

VIII. Defendants' Motion to Preclude Testimony and Reports of Anthony J. Dannible

Defendants move to preclude the testimony of Anthony J. Dannible, a certified public accountant retained by plaintiff to offer expert testimony regarding plaintiff's damages resulting from defendants' alleged infringement.  According to the defendants, Dannible used the wrong analysis to determine the plaintiff's damages, and also relied on incorrect data, and flawed, unsupported

assumptions.  Special Master Berenato recommended that Dannible be allowed to testify as to plaintiff's alleged damages on grounds that any deficiencies in Dannible's methodology, data, or assumptions may be explored on cross-examination.

I concur with the Special Master's findings, and for the Reasons stated in his Report and Recommendation, I deny defendants' motion to preclude Dannible's testimony.  To the extent that defendants believe that Dannible's methods, data, and assumptions are flawed, the defendants may test all of those areas on cross-examination.

IX.  The Parties' motions for Summary Judgment.

Having decided the evidentiary matters contested by the parties, I know address the parties competing motions for summary judgment.  The plaintiff seeks partial summary judgment asking the court for a declaration that the defendants' "Sno-Pusher" products infringe upon its design patents.  Defendants move for partial summary judgment seeking a declaration several of its models do not infringe the plaintiff's design patents.  Defendants further seek a declaration that claims 1, 2, 5, and 6 of the '576 Patent are invalid as being anticipated by prior art, and that all of the asserted patents are invalid as being obvious in light of prior art.  Finally, defendants seek a declaration that its "Angle Model"

snow pushers do not infringe the '576 Patent.  I discuss the parties motions separately below.

A.   Plaintiff's Motion for Partial Summary Judgment

The Special Master, in his second Report and Recommendation, (docket item no. 132) recommended that plaintiff's motion seeking a declaration that defendants' "sno-pusher" products infringe the plaintiff's asserted design patents be denied.  In doing so, the Special Master set forth the correct 2-step standard for determining infringement of design patents.  See Report and Recommendation at p. 6 ("First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device.")(quoting Cybor Corp. v. Fas Techs, Inc., 138 F.3d 1448, 1454 (Fed. Cir., 1998).  Employing this standard, as well as additional legal standards set forth in the Report and Recommendation, Special Master Berenato determined that Degelman had failed to establish by a preponderance of the evidence that the accused products were "substantially" the same as the properly construed claims of the asserted design patents.  Specifically, after a thorough and detailed discussion of the '097, '127, and '128 patents, and the accused sno-pusher products of the defendants, Special Master Berenato determined that there were genuine issues of material fact which precluded a grant of summary

judgment to the plaintiff on the issue of infringement of the design patents by the sno-pusher products.

The Plaintiff objects to several aspects of the Special Master's Report, and argues that at least with respect to its claims of infringement of the '128 Patent, it has demonstrated infringement by a preponderance of the evidence, and the defendants have failed to present any evidence to suggest that its sno-pusher products do not infringe the '128 Patent.

I find, however, for the reasons stated by the Special Master, that genuine issues of material fact exist which preclude granting summary judgment to the plaintiff on the issue of infringement of the design patents by the sno-pusher products.  Plaintiff has failed to produce evidence, that, when considered in the light most favorable to the defendants, establishes that it is entitled to a judgment of infringement of any of the design patents as a mater of law.  As stated by the Special Master, to establish infringement of a design patent, the patent holder must demonstrate that "'an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design.'"  Report and Recommendation at p. 6 (quoting Egyptian Goddess, 543 F.3d at 679).  While plaintiff has presented some evidence of similarity between its patented designs and the defendants' products, the defendants have similarly presented evidence of dissimilarity between its accused products and the asserted design patents.  Because the competing evidence presents

27

genuine issues of material fact, the court cannot grant summary judgment to the plaintiff. I therefore deny plaintiff's motion for partial summary judgment.


B.   Defendants' Motion for Partial Summary Judgment

As stated above, the defendants motion for partial summary judgment seeks several forms of relief. First, the defendants seek a declaration that several of its models do not infringe the plaintiff's design patents. Defendants further seek a declaration that claims 1, 2, 5, and 6 of the '576 Patent are invalid as being anticipated by prior art, and that all of the asserted patents are invalid as being obvious in light of prior art. Finally, defendants seek a declaration that its "Angle Model" snow pushers do not infringe the '576 Patent. I discuss these claims seriatim.

1.   Infringement of the Design Patents

Special Master Berenato, in an extremely detailed analysis and discussion of the patents in suit and the accused products, recommended that the defendants' motion for summary judgment with respect to infringement be:

> Denied as to non-infringement of the D'097 Patent and the D'129 Patent by the Pro-Tech accused SPL Loader Model, SPS Skid Steer Model, SPB Backhoe Model, IST Loader Model, IST Backhoe Model, IST Skid Steer Model, PBS Pull Back Model, and SPC Compact Model.

> Granted as to non-infringement, both literal and under the doctrine of equivalents, of the D'097 Patent and the D'129 Patent by the Pro-tech accused FPL Fold Out Model, SBL

Switchblade Loader Model, Super Duty Loader Model SBB, Switchblade Backhoe Model, SBS Switchblade Skid Steer Model, and FTF Forklift Model.

Denied as to non-infringement of the D'128 Patent by the Pro-Tech accused SPL Loader Model, SPS Skid Steer Model, SPB Backhoe Model, IST Loader Model, IST Backhoe Model, IST Skid Steer Model, PBS Pull Back Model, SPC Compact Model, FPL Fold Out Model, and FTF Forklift Model.

Granted as to non-infringement, both literal and under the doctrine of equivalents, of the D'128 Patent by the Pro-Tech accused SBL Switchblade Loader Model, SSB Switchblade Backhoe Model, the SBS Switchblade Skid Steer Model, and the Super Duty Loader Model.

Report and Recommendation (docket item no. 131) at pp. 48-49.

Having reviewed the record de novo, and having reviewed the defendants' objections to the Special Master's Recommendation, I adopt the Special Master's Report and Recommendation in its entirety without modification, and grant in-part and deny in-part the defendants' motion for summary judgment on the issue of infringement as set forth by the Special Master in his Report and Recommendation. The Special Master's report on this matter is so thorough, and so comprehensive, that no further elucidation is necessary, and indeed, further comment would likely only detract from the clarity of the Special Master's explication of the complicated issues raised in defendant's infringement motion. Defendants objections do not demonstrate that the Special Master erred in either his factual or legal analysis of the infringement

issues, and therefore, his recommendations are adopted without modification.

    2.    Invalidity of Claims 1, 2, 5, and 6 of the '576 Patent as <u>anticipated</u>

Special Master Berenato recommended that the defendants' motion for summary judgment seeking a declaration that claims 1, 2, 5, and 6 of the '576 Patent are invalid as anticipated be denied on grounds that the evidence submitted by the defendants in support of their claim (which constituted testimony of several witnesses) failed to constitute clear and convincing evidence sufficient to overcome the presumption of validity of the claims of the '576 Patent. Specifically, Special Master Berenato found that defendants' witness Godici failed to establish first hand knowledge of the prior art which he claims invalidates the claims of the '576 Patent, and instead relied on hearsay evidence in concluding that claims 1, 2, 5, and 6 of the '576 Patent are anticipated by prior art. Special Master Berenato further determined that because the evidence of the prior art relied on by the defendants was ambiguous in that: no physical example of the prior art exists, testimony establishing that characteristics of the prior art was based on witnesses recollections of the prior art, no photographs of the prior art establish exactly what the prior art plow looked like, it is not agreed that blueprints of the plow accurately depict the plow as fabricated, and some evidence suggested that the prior art plow suffered significant limitations to its utility because of its weight and size, defendants failed to present clear and convincing

evidence of anticipation of claims 1, 2, 5, and 6 of the '576 Patent.

Defendants object to the Special Master's recommendation, and contend that the evidence they submitted satisfies its burden of establishing that the '576 patent is anticipated by the prior-art pull plow and snow blower identified by the defendants.  I find, however, for the reasons stated by the Special Master, that the defendants have not met their burden of proving by clear and convincing evidence that claims 1, 2, 5, and 6 of the '576 Patent are anticipated by any prior art.  As stated by the Special Master, the testimony regarding the prior art is ambiguous in that the actual characteristics of the prior art are not clear.  The testimony thus raises questions fact that cannot be resolved in a motion for summary judgement.  I therefore adopt the Special Master's recommendation, and deny defendant's motion for summary judgment seeking a declaration of  invalidity of claims 1, 2, 5, and 6 of the '576 Patent.

    3.   <u>Invalidity of all asserted patents as obvious</u>

Special Master Berenato recommended that defendants' motion for summary judgment seeking a declaration that the asserted patents are invalid as obvious be denied.  In so recommending, Special Master Berenato found that with respect to the asserted patents, the defendants had failed to carry their burden of proof that the patents were obvious in light of prior art because genuine

issues of material fact remained as to whether or not the plow relied up by the defendants in demonstrating obviousness constitutes prior art, and if so, whether it teaches art that renders the patents obvious.

Defendants object to the Special Master's recommendation, and contend that the affidavit of its expert witness Alan Douglas establishes that the Daniels Pull Plow, which it asserts as prior art rendering the asserted patents invalid as obvious, discloses elements that would have led a patent examiner to conclude that the design patents are obvious. Defendants further assert that the affidavits of their expert witnesses Godici and Douglas establish that the '576 Patent is obvious in light of the Daniels Pull Plow and U.S. Patent 3,557,850.

However, for the reasons stated in the Special Master's Report, I find that defendant has failed to establish the obviousness of the asserted patents as a matter of law, and find that material questions of fact preclude granting the defendant's motion. Considering the evidence of record in the light most favorable to the plaintiff, the evidence submitted by the defendants does not establish that no rational jury could find in favor of the plaintiff on the issue of obviousness. Accordingly, I adopt the Special Master's Report and Recommendation, and deny defendant's motion for summary judgment seeking a declaration that the asserted patents are invalid as obvious.

4.   Infringement by Angle Model Snow Pushers

Defendants seek a declaration that its Angle Model snow pushers do not infringe any of the plaintiff's patents. At oral argument, plaintiff withdrew its claims of infringement by the Angle Model, and therefore defendants' motion is moot.

**CONCLUSION**

For the reasons stated above, I adopt the Reports and Recommendations issued by Special Master Berenato (Docket items 131, 132, 133, 134, 135, 137, and 138) in their entirety. Specifically, I:

- deny plaintiff's motion for partial summary judgement (docket item no. 77);

- grant in-part and deny in-part defendants' motion for partial summary judgment (docket item no.80). I find that the defendants' SBL Switchblade Loader Model, Super Duty Loader Model, SBB Switchblade Backhoe Model, and SBS Switchblade Skid Steer Model, do not infringe the '097, '128, or '129 Patents, and I therefore grant defendants' motion for summary judgment seeking a declaration of non-infringement of the '097, '128, and '129 Patents with respect to those products. I find that the defendants' FPL Fold Out Model and FTF Forklift Model do not infringe the '097 or '129 Patents, and I therefore grant defendants' motion for summary judgment seeking a declaration of non-infringement of the '097, and '129 Patents with respect to those products. I deny defendants' request for a declaratory judgment that its remaining accused products do not infringe the plaintiff's asserted patents;

- grant in-part and deny in-part plaintiff's motion to preclude the testimony of Nicholas P. Godici (docket item no. 78). Godici may testify as to practices and procedures before the Patent and Trademark Office PTO, but may not testify on the issues of whether or not the plaintiff engaged in inequitable conduct, and whether or not the asserted patents are valid;

- grant in-part and deny in-part plaintiff's motion to preclude the testimony of Alan P. Douglas (docket item no. 78). Douglas may testify as to practices and procedures before the PTO, but may not testify on the issues of whether or not the plaintiff engaged in inequitable conduct, and whether or not the asserted patents are valid;

- grant in part and deny-in part plaintiff's motion to preclude the testimony of Jerre Heyer (docket item no. 78). Heyer may testify as an ordinary observer with respect to the appearance of the accused products and apparatus disclosed in the asserted design patents. Heyer may not testify on the issue of infringement;

- grant in-part and deny in-part plaintiff's motion to preclude the testimony of William Leonard (docket item no. 78). Leonard may testify as to the design and fabrication of reinforcing members for reinforcing welded joints but may not testify on the issues of patent validity;

- deny defendants' motion to preclude the testimony of Anthony Dannible (docket item no. 80);

- grant defendants' motion to preclude the testimony of David J. Quesnel (docket item no. 87);

- grant plaintiff's motions to strike the Declarations of Donald W. O'Brien (docket item nos. 86 and 97) subject to the exception that the documents attached to the O'Brien Declarations may be admitted to the record;

- grant defendants' motion to supplement the record with the Declaration of Duane C. Basch (docket item no. 111);

- grant plaintiff's motion to strike the Affidavit of Leslie Craig (docket item no. 97);

- deny plaintiff's motion to strike the Affidavit of Michael P. Weagley (docket item no. 86).

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          December 23, 2011

34