

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DEGELMAN INDUSTRIES LTD.,

              Plaintiff(s),
v.

PRO-TECH WELDING AND FABRICATION,
INC. and MICHAEL P. WEAGLEY,

              Defendant(s).

DECISION and ORDER
06-CV-6346

## Background

On March 8, 2013, after a two week trial, the jury returned a verdict finding the plaintiff had proven that the patents-in-suit were infringed by defendants, but also that defendants had proven by clear and convincing evidence that the patents were invalid. See Docket # 220. The Court entered judgement on March 18, 2013. See Docket ## 222, 223. Presently before the Court is a motion filed by the plaintiff Degelman Industries Ltd. (hereinafter Degelman) seeking judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, a new trial pursuant to Fed. R. Civ. P. 59. (Docket # 234). For the reasons that follow, Degelman's motion (Docket # 234) is **denied**.

A. Judgment as a Matter of Law: Although not addressed in its moving papers, during oral argument Degelman conceded that no motion was made for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure before this case was submitted to the jury. Rule 50(b) of the Federal Rules of Civil Procedure

only permits a party to "renew" a <u>previously made</u> Rule 50(a) motion. Thus, absent "manifest injustice," where a Rule 50(a) motion has not previously been made, a Rule 50(b) motion "should not be granted." <u>Broadnax v. City of New Haven</u>, 415 F.3d 265, 268 (2d Cir. 2005); <u>Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1155 (2d Cir. 1994). In seeking judgment as a matter of law, Degelman does not argue that manifest injustice occurred and this Court discerns no injustice in the jury's verdict. Accordingly, the Court finds that Degelman's motion for judgment as a matter of law has been waived and therefore must be **denied**.

B. <u>Motion for a New Trial</u>: The Court should not order a new trial unless it is convinced that "the jury has reached a seriously erroneous result or" that the "verdict is a miscarriage of justice." <u>Nimely v. City of New York</u>, 414 F.3d 381, 392 (2d Cir. 2005)(citations omitted). While the "trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner" (<u>see</u> <u>Bevevino v. Saydjari</u>, 574 F.2d 676, 684 (2d Cir. 1978)), "[i]t is well settled that a trial judge's disagreement with the jury's verdict is not sufficient reason to grant a new trial." <u>Mallis v. Bankers Trust Co.</u>, 717 F.2d 683, 691 (2d Cir. 1983). <u>See</u> <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 134 (2d Cir. 1998)("A court considering a Rule 59 motion for a new trial must bear in mind, however, that the

court should only grant such a motion when the jury's verdict is 'egregious.'")(citation omitted). Here, Degelman has raised various grounds upon which it claims that the jury's verdict is seriously erroneous or represents a miscarriage of justice.

1. <u>Sufficiency of Evidence of Invalidity</u>: Degelman argues that the evidence presented at trial was insufficient to overcome the presumption of patent validity found in 35 U.S.C. § 282. This Court disagrees. First, given the straightforward nature of the claimed invention, expert testimony was not required on the issues of invalidity or obviousness. See <u>Centricut, LLC v. Esab Grp., Inc.</u>, 390 F.3d 1361, 1369 (Fed. Cir. 2004)("In many patent cases expert testimony will not be necessary because the technology will be easily understandable without the need for expert explanatory testimony.")(internal quotation mark and citations omitted); <u>Union Carbide Corp. v. Am. Can Co.</u>, 724 F.2d 1567, 1573 (Fed. Cir. 1984)(where prior art references and the invention were "easily understandable" there was no "need for expert explanatory testimony"). Second, the invalidity defense presented at trial was not particularly complicated. Degelman's claim that it researched, developed and invented a unique wedge shaped gusset for use in a snow containment plow was fully presented to the jury, as was defendants' claim that thirty years before Degelman's claimed invention, a pull plow incorporating a wedge shaped gusset was fabricated, tested and publicly used in Illinois. Degelman

forcefully argued to the jury, as it does in this post-trial motion, that the testimony defendants introduced "about a plow that was supposedly used over thirty years ago" was not worthy of belief because it was "suspect, inconsistent and tainted."  See Plaintiff's Memorandum of Law annexed to Docket # 234 at p. 3.  For their part, defendants characterize the same testimony as "clear," "convincing," "consistent" and "highly probative evidence of a disqualifying prior art reference which answers Degelman's claim that its development of a wedge-shaped gusset for use in a containment plow was somehow revolutionary."  See Defendants' Memorandum of Law (Docket # 236) at p. 19.  In the same vein, Degelman complains that the Tenco Snowblower was not analogous prior art, that defendants failed to present evidence of any motivation to combine elements of the applicable art and that Degelman's evidence of secondary considerations was not sufficiently controverted.  See Plaintiff's Memorandum of Law annexed to Docket # 234 at pp. 4-8.

This was a case that was extensively litigated over many years.  The record of the litigation pays tribute to the myriad of factual, legal and evidentiary issues that were determined prior to and during the trial.  The essence of Degelman's arguments now is that the jury made the wrong decision.  But on each sufficiency issue now raised by Degelman, there _were_ material factual disputes and there _was_ competing evidence presented at trial for the jury to

consider and evaluate on each of those disputes. See Dawn Equip. Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1014 (Fed. Cir. 1998)(when a court evaluates factual findings "for substantial evidence, the inquiry is whether a reasonable jury, given the record before it viewed as a whole, could have arrived at the conclusion it did"). Based upon my observation of the jury during the trial, I have no doubt that they were attentive to the evidence presented, evaluated the competing views presented by the parties, and followed the Court's instruction on the law, including the heightened burden of proof necessary for a finding of invalidity. Using an agreed upon general verdict form to guide their deliberations, the jury unanimously found in favor of the defendants on the issue of invalidity. At this juncture of the litigation, I can find no good reason why their findings were seriously erroneous or represent a miscarriage of justice.

2. The "Orsolini Drawing": In a motion *in limine* filed before trial, and again during the trial, Degelman objected to the admissibility of the so-called "Orsolini drawing." The Orsolini drawing was not prior art and was not admitted as such. Rather, the drawing was admitted as corroboration of the testimony of several witnesses who, *inter alia*, testified that a pull plow conceived by Mr. Daniels and fabricated by Mr. Orsolini was publicly used in the 1970's. At Degelman's request, the Court drafted and read to the jury a limiting instruction incorporating

the Court's ruling. The Court declines to revisit the use of the Orsolini drawing, as I believe that my rulings were proper and the jury was well aware of the limited admissibility of the drawing. To the extent Degelman is arguing that defense counsel's references to the drawing in his summation were improper, that objection has not been preserved. See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 18 (2d Cir. 1996)("Only where an unpreserved error [is] so serious and flagrant that it goes to the very integrity of the trial will a new civil trial be warranted.")(internal quotations and citations omitted).

3. Jury Instructions: Degelman argues that the Court erred in its instruction to the jury on the effect of evidence presented at trial that may not have been considered by the USPTO in issuing the patent. The instruction at issue was based on the Supreme Court's holding in Microsoft Corp. v. i4i Ltd. P'ship, __ U.S. __, 131 S. Ct. 2238 (2011). There is no question that "[t]he presumption of validity attaches to all issued patents and the clear and convincing evidence burden applies to all issued patents" that are challenged in court. Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1260 (Fed. Cir. 2012). Nevertheless, "[w]hile the ultimate burden of proof does not change, new evidence not considered by the PTO "may 'carry more weight' . . . than evidence previously considered by the PTO," and may "'go further toward sustaining the attacker's unchanging burden.'" Id. (quoting Microsoft Corp. v.

i4i Ltd. P'ship, 131 S. Ct. at 2251).

> For example, it could be reasonable to give more weight to new arguments or references that were not explicitly considered by the PTO when determining whether a defendant met its burden of providing clear and convincing evidence of invalidity. Conversely, it may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly, whether a reference was before the PTO goes to the weight of the evidence, <u>and the parties are of course free to, and generally do, make these arguments to the fact finder</u>. But the presumption of validity and accompanying burden of proof, clear and convincing evidence, are not altered.

Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d at 1260-61 (internal citation omitted)(emphasis added).

I believe my instructions to the jury in this regard were consistent with the Supreme Court's holding in Microsoft Corp. v. i4i Ltd. P'ship and, to the extent the objection has been preserved by Degelman, its arguments do not justify a new trial on the issue of invalidity.

    4. <u>Testimony of Jerre Heyer</u>: Degelman contends the Court erred in allowing the testimony of Jerre Heyer as an ordinary observer of the similarities and differences between plaintiff's patented designs and the accused products. The testimony of Heyer was specifically permitted in the pretrial rulings of the Special Master and Judge Telesca and I believe my rulings were consistent with those prior rulings. Specifically, I disagree with Degelman's

claim that the Court allowed Heyer to testify on the ultimate issue of whether the defendants were guilty of patent infringement. For the reasons I stated during the trial, the Court has no reason to reconsider its ruling on whether it was proper for the jury to compare Degelman's commercial embodiment of its patents with the accused products and whether anecdotal evidence of "customer confusion" should have been allowed.

5. <u>Inconsistent Verdict</u>: Degelman's claimed error of an inconsistency in the jury's verdict has been waived. <u>Cash v. Cnty. of Erie</u>, 654 F.3d 324, 342 (2d Cir. 2011)(verdict "challenge was waived by defendants' failure to raise an inconsistency objection before the district court discharged the jury"); <u>Kosmynka v. Polaris Indus., Inc.</u>, 462 F.3d 74, 83 (2d Cir. 2006)("It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury.").

In sum, the Court has little doubt that errors were probably made during the seven years this case was prosecuted and, despite the best efforts of the Court and experienced counsel, neither party in this case received a perfect trial. But, as the Supreme Court has observed:

> a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials. Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the

> resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload.

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984)(internal quotations and citations omitted). Here, the record does not support a finding that the jury reached a "seriously erroneous result" or that the verdict represents a "miscarriage of justice." Accordingly, Degelman has not met the required level of error and, therefore, its post-trial motion for a new trial (Docket # 234) must be **denied**.

### Further Proceedings

Still pending before the Court are (1) defendants' motions for a bill of costs, (2) final determination of the defendants' inequitable conduct claims, and (3) determination of plaintiff's motion for relief from judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure. Degelman's Rule 60 motion was filed on June 28, 2013, after oral argument of the instant motion for judgment as a matter of law and for a new trial. The Rule 60 motion is based on a post-trial reexamination determination by the United States Patent and Trademark Office confirming all claims in Degelman's '863 patent. According to Degelman, the '863 patent shares a common lineage with the patents-in-suit and contains similar elements and claims as the patents-in-suit. See Memorandum of Law in Support of Plaintiff's Motion for Relief Pursuant to Rule 60 (Docket # 251). Degelman alleges that the reexamination

proceeding was initiated by the defendants and included submission of the same prior art references defendants relied on at trial in seeking to invalidate the patents-in-suit. Id. A briefing schedule on Degelman's Rule 60 motion has recently been entered by the Court. See Docket # 252. It seems to this Court that determination of Degelman's Rule 60 motion should be determined next as it may impact both the motion for costs and defendants' inequitable conduct claims.[1]

### Conclusion

Degelman's motion for judgment as a matter of law, or alternatively, a new trial (Docket # 234) is **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated: July 17, 2013
       Rochester, New York

---

[1] Given the remaining issues, and what both counsel have predicted as an inevitable appeal to the Federal Circuit over the jury's verdict, the Court asks the parties to consider whether it makes business sense to re-engage in settlement discussions at this juncture of the litigation.